# FEDERAL MARINE TERMINALS, INC. *v.* BURNSIDE SHIPPING CO., LTD.

No. 291.   Argued January 15, 1969.—Decided April 1, 1969.

*John W. Hough* argued the cause for petitioner. With him on the briefs was *Robert C. Keck*.

*Paul McCambridge* argued the cause for respondent. With him on the brief was *Lucian Y. Ray*.

MR. JUSTICE STEWART delivered the opinion of the Court.

Under § 33 of the Longshoremen's and Harbor Workers' Compensation Act,[1] an employer who pays compensa-

---

[1] Section 33, as amended in 1959, 73 Stat. 391, as set forth in 33 U. S. C. § 933, reads as follows:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

"(c) The payment [of such compensation into the fund established] in section 944 of this title shall operate as an assignment to the employer of all right of the legal representative of the deceased (hereinafter referred to as 'representative') to recover damages against such third person.

"(d) Such employer on account of such assignment may either institute proceedings for the recovery of such damages or may

tion benefits to the representative of a deceased employee may be subrogated to the rights of the representative

compromise with such third person either without or after instituting such proceeding.

"(e) Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

"(1) The employer shall retain an amount equal to—

"(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner);

"(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

"(C) all amounts paid as compensation;

"(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and

"(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer.

"(f) If the person entitled to compensation institutes proceedings within the period prescribed in subdivision (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person.

"(g) If compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled to [*sic*] under this chapter, the employer shall be liable for compensation as determined in subdivision (f) of this section only if such compromise is made with his written approval.

"(h) Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier

against third persons.[2]   The question presented by this case is whether a stevedoring contractor whose longshoreman employee was killed in the course of his employment is limited to this subrogation remedy in seeking reimbursement from a shipowner on whose vessel the longshoreman met his death.   Both the District Court [3] and the Court of Appeals [4] held that statutory subrogation is the stevedoring contractor's exclusive remedy against the shipowner, and we granted certiorari to consider this novel question under the Act.[5]

## I.

According to the stipulation of facts, the M/V *Otterburn,* owned and operated by respondent Burnside Shipping Co., was under time charter to Federal Commerce and Navigation Co., a Canadian corporation affiliated with the petitioner, Federal Marine Terminals, Inc. Federal Commerce hired Marine Terminals to continue the operation, already commenced by the ship's crew, of preparing the vessel to receive a cargo of grain.   While the ship was docked in Detroit, the crew had commenced installation of "grain feeders"—walled-in structures

---

shall be subrogated to all the rights of the employer under this section.

"(i) The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: *Provided,* That this provision shall not affect the liability of a person other than an officer or employee of the employer."

[2] If the representative decides to bring suit against the third person within six months of the award, as in this case, the employer's liability for compensation is reduced by the amount recovered by the representative from the third person.   See § 33 (f), *supra,* n. 1.

[3] 284 F. Supp. 740.

[4] 392 F. 2d 918.

[5] 393 U. S. 820.

erected in the 'tween deck hatches to the height of the main deck hatch. After Marine Terminals had been employed to continue the work of readying the ship for its cargo, the boatswain, acting on the instructions of the ship's Chief Officer, "winged out" the deep tank lids—that is, pulled them outboard into the wings of the 'tween deck. No railing, wire, or guard of any kind was placed around the resulting deep tank openings.

Marine Terminals' employees began working on the *Otterburn* after it had been removed to Chicago. On the morning of the third day of work, a group of Marine Terminals' stevedores, supervised by Gordon McNeill, arrived at approximately 7 o'clock to continue with carpentry work in the 'tween deck as part of the last stages of completing a grain feeder in the area of the "winged out" deep tank lids. McNeill was last seen alive shortly after 8 a. m. At 8:45 a. m. his lifeless body was discovered lying at the bottom of one of the deep tanks. There were no witnesses to his 30-foot fall.

McNeill's widow filed a claim for benefits under the Act for herself and three minor children, and the Department of Labor entered a compensation order for weekly payments of $36.75 to the widow and $33.25 to the children. The potential total liability of Marine Terminals for these payments is approximately $70,000. As administratrix of McNeill's estate, his widow also filed a maritime wrongful death action against Burnside Shipping Co. in the United States District Court for the Northern District of Illinois. Burnside answered the complaint, denying that McNeill's death had been caused by its negligence or by its failure to furnish a seaworthy vessel.

Burnside also commenced a separate action in the same court against Marine Terminals seeking indemnification for any judgment it might be required to pay in the wrongful death action. The libel charged that, by virtue

of the agreement with the time charterer to prepare the ship for its cargo, Marine Terminals "warranted that its services to the vessel would be performed in a safe, workmanlike and seamanlike manner." That warranty was alleged to have been breached and the accident caused by Marine Terminals' negligence, giving rise to an obligation to save Burnside harmless from all liability and expense occasioned by McNeill's death.

Marine Terminals filed an answer denying most of the allegations of the libel, and also filed a counterclaim seeking damages from Burnside for "all sums which have been paid or will be paid" as compensation benefits to McNeill's dependents. The counterclaim alleged that Burnside, as owner and operator in control of the *Otterburn*, owed the stevedoring contractor "the duty of providing and maintaining a safe place to work so that injury to the employees . . . would be avoided." Burnside had violated that duty, according to the counterclaim, by its negligence

> "in failing to properly guard the deep tank opening, or make the passageway secure, or to cover up the said deep tank, and in failing to clear the passageways, and failing to provide adequate lighting in the area or to provide a safety railing around the deep tank opening, thereby causing, suffering and permitting the area and open deep tank to be a source of menace and danger."

Burnside moved to dismiss the counterclaim for failure to state a cause of action. Each party then filed a motion for summary judgment on its claim and counterclaim.

The District Court, finding that material factual disputes existed concerning the conduct of both parties, denied Burnside's motion for summary judgment on its

complaint.[6] But it did grant the motion to dismiss
Marine Terminals' counterclaim. The court noted
Marine Terminals' concession that its theory of a direct
action against the shipowner was novel. Normally the
stevedoring contractor is content with its remedy of
subrogation to the rights of the deceased longshoreman's
representative against whatever third party may be liable
for the death, usually the shipowner. In this case, how-
ever, the applicable Illinois Wrongful Death Act limited
the amount recoverable by the decedent's representative
to $30,000,[7] far short of Marine Terminals' potential
liability of $70,000. The court recognized that "[t]he
existence of such a direct right over is well established in

[6] The District Court found that crucial factual issues existed
regarding the longshoremen's knowledge of the open hatch and the
parties' relative duties of inspection. McNeill had been present at
the time the hatch lids were "winged out," but the court noted that
the factual question was posed whether McNeill could reasonably
have assumed that the covers would be replaced and had merely
entered the area to check it for safety.

[7] The Illinois Wrongful Death Act was amended in 1967 to remove
the ceiling on damages, but the amendment was made prospective
only, and the Act still limits the recovery to $30,000 "where such
death occurs on or after July 8, 1957 and prior to the effective date
[August 18, 1967] of this amendatory Act of 1967 . . . ." Ill. Rev.
Stat., c. 70, § 2.

The District Court has reserved the question whether, suing as
subrogee, the employer's recovery would be limited by the Illinois
statute:

"In our judgment, defendant's theory of a direct action cannot
be supported, and its counterclaim must be dismissed without preju-
dice to the filing of an amended counterclaim which alleges a cause
of action derived from the persons entitled to compensation. If
such an amendment is filed, we may then have occasion to consider
whether as subrogee or assignee, the defendant's possible recovery
is limited by the damage ceiling of the Illinois Wrongful Death Act."
284 F. Supp., at 744–745.

certain situations,"[8] but concluded that the employer's rights provided by the Longshoremen's and Harbor Workers' Compensation Act are exclusive and "prevent him from maintaining an independent cause of action against the third party tortfeasor."[9]

The Court of Appeals affirmed, agreeing that Marine Terminals' sole remedy is by subrogation under the Act. But while the District Court had implied that the stevedoring contractor would have had a direct action had it not been abrogated by the Act, the Court of Appeals appeared to assume that, in the absence of the statutory remedy, federal maritime law would permit no direct recovery from the shipowner:

"There is no common law direct action as the defendant argues. There is only the Longshoremen's and Harbor Workers' Compensation Act which creates an entire legal procedure in this part of admiralty law. We cannot search outside of the Act for common law remedies which do not exist. The Act is the source of all remedies."[10]

This case thus presents two questions. First, does § 33 of the Act exclude whatever other rights of action the stevedoring contractor might have against the shipowner for compensation payments to an employee or his representative? Second, if statutory subrogation is not an

---

[8] 284 F. Supp., at 744. The District Court noted that the petitioner's theory is summarized in § 96 of the Restatement of Restitution:

"A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful death of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability."

[9] 284 F. Supp., at 744.

[10] 392 F. 2d, at 920.

exclusive remedy, does the shipowner owe the stevedoring contractor any duty whose breach will give rise to a direct action? We consider these questions in order below.

## II.

The Court of Appeals was clearly mistaken in its assertion that "[t]he statutory method provides that the [stevedoring contractor] can sue only as a subrogee."[11] Nothing on the face of § 33 of the Act purports to limit the employer's remedy against third persons to subrogation to the rights of the deceased employee's representative. The provision of § 33 that the employer's payment of compensation "shall operate as an assignment to the employer of all right of the legal representative of the deceased . . . to recover damages against such third person" contains no words of limitation. Congress thereby gave the employer, in return for his absolute liability to the employee's representative, part of the latter's rights against others. But the legislative grant of a new right does not ordinarily cut off or preclude other nonstatutory rights in the absence of clear language to that effect. When Congress imposed on the employer absolute liability for compensation, it explicitly made that liability exclusive.[12] Yet in the same Act it at-

---

[11] *Ibid.*

[12] Section 5, 44 Stat. 1426, as set forth in 33 U. S. C. § 905, reads as follows:

"The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results

tached no such exclusivity to the employer's action against third persons as subrogee to the rights of the employee or his representative.

Nothing in the legislative history of the Act remotely supports the construction adopted by the courts below. And we can perceive no reason why Congress would have intended so to curtail the stevedoring contractor's rights against the shipowner. The exclusivity of the statutory compensation remedy against the employer was designed to counterbalance the imposition of absolute liability; there is no comparable *quid pro quo* in the relationship between the employer and third persons. On the contrary, as we emphasized in *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.,* 350 U. S. 124, the Act is concerned only with the rights and obligations as between the stevedoring contractor and the employee or his representative. It does not affect independent relationships between the stevedoring contractor and the shipowner. Neither this Court [13] nor, before this case, any other

---

from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

[13] Both the District Court and the Court of Appeals relied upon *Doleman* v. *Levine,* 295 U. S. 221, citing it for the proposition that the employer's "rights are derived from the person entitled to compensation." The decision, however, held only that, under the predecessor of § 33, the employer could not maintain a wrongful death action in his own name if he was subrogated to the rights of only one of the dependents entitled to bring the action. Not a word of the opinion in that case suggests that § 33 of the Act was the *only* source of the employer's rights against third persons for liability to his employees.

court [14] has held that statutory subrogation is the employer's exclusive remedy against third party wrongdoers, and we decline to so hold today.

## III.

We must also reject the implication of the Court of Appeals' opinion that under federal maritime law the shipowner owed the stevedoring contractor no duties whose breach would give rise to a direct action for dam-

---

[14] The District Court rested on the following rationale of the District Court for the Southern District of California in *California Casualty Indemnity Exchange* v. *United States*, 74 F. Supp. 401, 404:

"The right of recoupment [under the federal Act] on the ground of third party liability is not a right *created* in the libelants by Statute as in the California Compensation Act. . . . The difference lies in the fact that the rights of the employer and its insurance carrier under the Longshoremen's Act result solely by an assignment of the original rights of the injured person, which original rights are not created by the Statute. The act of the injured person, or representatives of decedent in seeking and accepting compensation under the Longshoremen's Act operates as an assignment of those rights and creates no new right of action in the employer as is done in the California Law. The assignee has and can have no greater right than the assignor. . . ."

It is clear even from the face of this passage, however, that the court in *California Casualty* was addressing itself to a different question from that presented by the instant case. The plaintiffs there had brought suit "as subrogee insurance carrier[s]," *id.*, at 403, and the holding was only that when the employer or his insurance carrier sues *as subrogee*, his rights are derived from and therefore identical to those of the employee. The case did not hold that the employer's remedy as subrogee is exclusive.

Nor did the District Court for the Northern District of Ohio so hold in *Reiss S. S. Co.* v. *Cyr*, 138 F. Supp. 834, aff'd, 229 F. 2d 849, another case relied on by the District Court below. Language in the *Reiss* opinion to the effect that § 33 "governs exclusively in instances of third party liability," *id.*, at 836, referred only to the relationship between employer and employee under the Act, not to the relationship between the employer and third parties.

ages. As we held in *Kermarec* v. *Compagnie Generale Transatlantique*, 358 U. S. 625, 632, "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." That duty of due care imposed by law extends to the stevedoring company as well as to others lawfully on the ship, and its breach gives rise to a cause of action for any damages proximately caused. It is not disputed, for example, that if the shipowner's negligence caused damages to the stevedoring contractor's equipment, those damages would be recoverable in a direct action sounding in tort. We can see no reason why the shipowner's liability does not in like fashion extend to the foreseeable obligations of the stevedoring contractor for compensation payments to the representative of a longshoreman whose death was occasioned by the shipowner's breach of his duty to the stevedoring contractor.

We do not, of course, hold that the shipowner's duty to the employer is the same as to the employee. Nor do we disapprove the Court of Appeals' holding that the shipowner does not owe to the stevedoring contractor the absolute duty of seaworthiness owed to individual longshoremen.[15] But Marine Terminals' counterclaim in this action did not rely on the unseaworthiness of the ship. Rather it charged that Burnside had been negligent in certain particular respects.[16] And we have suggested before this that, while "the duties owing from [the shipowner] to [the longshoreman] were not identical with those from [the shipowner] to [the stevedoring contractor]," the shipowner can be negligent with respect

---

[15] See *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85; *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96.

[16] See *supra*, at 409.

to the stevedoring contractor as well as to the longshoreman. *Weyerhaeuser S. S. Co.* v. *Nacirema Operating Co.,* 355 U. S. 563, 568.[17] Neither court below reached the question whether the counterclaim sufficiently alleged a breach of the duties owed by Burnside to Marine Terminals, and relevant factual questions remain unresolved. With the case in its present posture, therefore, we express no opinion as to whether the conduct of Burnside's employees amounted to a breach of the duty it owed to Marine Terminals.[18] We hold only that federal mari-

[17] The context of this statement in *Weyerhaeuser* was our treatment of the stevedoring contractor's contention that the shipowner's conduct had been such as to preclude recovery for the stevedoring contractor's breach of warranty. The statement that the shipowner owed the stevedoring contractor certain duties did not identify the source of those duties, but our discussion of the subject was in terms of obligations imposed by law:

"the duties owing from petitioner [the shipowner] to Connolly [the longshoreman] were not identical with those from petitioner to respondent [the stevedoring contractor]. While the jury found petitioner 'guilty of some act of negligence,' that ultimate finding might have been predicated, *inter alia,* on a failure of petitioner to remove the shelter when the ship left New York, or a failure to correct or warn respondent of a latent dangerous condition known to petitioner when respondent began the Boston unloading. Likewise, the finding might have been predicated on a failure of petitioner during the five days in Boston to inspect the shelter, detect and correct the unsafe condition. Although any of these possibilities could provide Connolly a basis of recovery, at least the latter would not, under *Ryan,* prevent recovery by petitioner in the third-party action." 355 U. S., at 568.

[18] The Federal District Court for the Southern District of California has held that the shipowner owes the stevedoring contractor at least the following obligations:

"(1) to exercise ordinary care under the circumstances to place the ship on which the stevedoring work is to be done, and the equipment and appliances aboard ship, in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary

time law does impose on the shipowner a duty to the stevedoring contractor of due care under the circumstances, and does recognize a direct action in tort against the shipowner to recover the amount of compensation payments occasioned by the latter's negligence.

This holding is in no wise a departure from our decision in *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S. 282, 285, that we would not "fashion

---

care under the circumstances to load or discharge the cargo, as the case may be, in a workmanlike manner and with reasonable safety to persons and property; and (2) to give the stevedoring contractor reasonable warning of the existence of any latent or hidden danger which has not been remedied and is not usually encountered or reasonably to be expected by an expert and experienced stevedoring company in the performance of the stevedoring work aboard the ship, if the shipowner actually knows or, in the exercise of ordinary care under the circumstances, should know of the existence of such danger, and the danger is one which the shipowner should reasonably expect a stevedoring contractor to encounter in the performance of the stevedoring contract." *Hugev* v. *Dampskisaktieselskabet International*, 170 F. Supp. 601, 610–611, aff'd *sub nom. Metropolitan Stevedore Co.* v. *Dampskisaktieselskabet International*, 274 F. 2d 875, cert. denied, 363 U. S. 803.

While the court identified these obligations as implied in fact from the stevedoring contract, it indicated that they also constituted the "duty of ordinary care imposed by law toward 'persons rightfully transacting business on ships.'" 170 F. Supp., at 610.

In the case of *Mickle* v. *The Henriette Wilhelmine Schulte*, 188 F. Supp. 77, 80, the District Court for the Northern District of California, while rejecting the argument that such obligations were contractual, agreed that the occupier of a ship

"owes certain duties of care to a business invitee, especially to an independent contractor, such as a stevedore company, which comes onto the premises to perform services, 2 Harper & James, The Law of Torts, Section 27.12 (1956), including the duty not to cause injury by negligent activity, 2 Restatement of Torts, Section 341; the duty to warn of latent perils actually known to the occupier, Prosser on Torts, 453 (1955); and the duty to inspect the premises to discover dangerous conditions. 2 Restatement of Torts, Section 343. See generally Prosser, supra, 452–62."

new judicial rules of contribution" between the ship-owner and the stevedoring contractor as joint tortfeasors. Marine Terminals is not seeking contribution. It is not asking Burnside to share responsibility for their joint negligence with respect to McNeill. Rather the counter-claim seeks recovery of the full amount of Marine Terminals' liability under the Act to McNeill's repre-sentative; and it is founded not on Burnside's wrong to McNeill but on its independent wrong to Marine Terminals.

We further note that at this stage of the case it must be assumed that Marine Terminals was faultless *vis-à-vis* Burnside, for the claim that Marine Terminals breached its *Ryan* warranty of workmanlike service has not yet been adjudicated and is not before us. We decide noth-ing today with respect to the interaction between the shipowner's breach of warranty claim and the steve-doring contractor's tort claim. Marine Terminals has charged Burnside with negligence not as a defense to the latter's *Ryan* claim but in a counterclaim for dam-ages, and we have considered that claim without regard to the implications of the shipowner's countervailing cause of action. Our holding is perforce limited to a rejection of Burnside's argument that "a shipowner's tortious conduct may be used as a shield, but not as a sword."

### IV.

In holding that the stevedoring contractor has a direct action in tort, we do not preclude the possibility of a direct action under some other theory. Marine Ter-minals argues in this case, for example, that just as a stevedoring contractor impliedly warrants to a shipowner under *Ryan* that it will perform the stevedoring services in a workmanlike manner, so also there are reciprocal contractual warranties running from the shipowner to

the stevedoring contractor.[19]   Burnside counters with the observation that the stevedoring contract in this case is between Marine Terminals and its affiliate Federal Commerce, the time charterer, and that there is therefore no privity of contract between Marine Terminals and Burnside.   Because the record before us contains neither the contract for stevedoring services nor the charter agreement, we cannot now assess these arguments.   We do not know, for instance, whether any provisions of the time charter contain express or implied warranties which would inure to the benefit of Marine Terminals as stevedoring contractor.[20]

---

[19] Such reciprocal contractual warranties were recognized in *Ryan,* Marine Terminals argues, by the Court's statement that "the *stevedoring contractor* . . . has received a contractual *quid pro quo* from the shipowner for assuming responsibility for the proper performance of all of the latter's stevedoring requirements . . . ." 350 U. S., at 129, n. 3.   (Emphasis in original.)   Other courts have most often dealt with the shipowner's duties only in the context of a stevedoring contractor's *defense* to a shipowner's claim for breach of *Ryan* warranties.   See, *e. g., D/S Ove Skou* v. *Hebert,* 365 F. 2d 341; *T. Smith & Son* v. *Skibs A/S Hassel,* 362 F. 2d 745; *Albanese* v. *N. V. Nederl. Amerik Stoomv. Maats.,* 346 F. 2d 481, rev'd on other grounds, 382 U. S. 283; *Misurella* v. *Isthmian Lines, Inc.,* 328 F. 2d 40; *Pettus* v. *Grace Line, Inc.,* 305 F. 2d 151; *Drago* v. *A/S Inger,* 305 F. 2d 139, cert. denied, 371 U. S. 925; *Calmar S. S. Corp.* v. *Nacirema Operating Co.,* 266 F. 2d 79, cert. denied, 361 U. S. 816.   They have on occasion, however, stated or intimated that the shipowner makes certain affirmative warranties to the stevedoring contractor whose breach would support an action for damages.   See, *e. g., The No. 34,* 25 F. 2d 602; *Pettus* v. *Grace Line, Inc.,* 305 F. 2d 151, 155 (dissenting opinion of Judge Clark); *Cusumano* v. *Wilhelmsen,* 267 F. Supp. 164; *Ring* v. *Motor Vessel Cape Clear,* 226 F. Supp. 709.   See also *Mowbray* v. *Merryweather,* [1895] 2 Q. B. 640.   See generally Proudfoot, "The Tar Baby": Maritime Personal-Injury Indemnity Actions, 20 Stan. L. Rev. 423, 442-445 (1968).

[20] The stevedoring contractor's warranty of workmanlike service under *Ryan* extends to the shipowner even in the absence of con-

Marine Terminals has also argued that, aside from any express or implied-in-fact contract, it has a quasi-contractual right of indemnity for the liability which it incurred under the Act on account of the shipowner's wrong. This right, which was evidently recognized by the District Court,[21] is said not to stem solely from the pre-existing contractual relationship between the parties, but to be conferred by law in order to place the liability where it justly belongs.[22]   As one court has described it,

> "admiralty courts have recognized a right to indemnity, as distinguished from contribution, in a person who has responded in damages for a loss caused by the wrong of another.   This right has been recognized in two general classes of cases: those in which the person seeking indemnification was without fault; and those in which such person was passively negligent, but the primary cause of the loss was the active negligence of another." [23]

Recovery can be based on this concept, Marine Terminals contends, because Burnside's conduct was either solely or primarily responsible for McNeill's death.

---

tractual privity between the parties. *Waterman S. S. Corp.* v. *Dugan & McNamara, Inc.*, 364 U. S. 421; *Crumady* v. *The Joachim Hendrik Fisser*, 358 U. S. 423.   For the suggestion that the stevedoring contractor may be the beneficiary of certain of the shipowner's obligations under the charter agreement, see *Drago* v. *A/S Inger*, 305 F. 2d 139, 143.

[21] See *supra,* at 410–411.

[22] This Court has recognized the objective under the Compensation Act of "placing the burden ultimately on the company whose default caused the injury." *Italia Societa per Azioni di Navigazione* v. *Oregon Stevedoring Co.*, 376 U. S. 315, 324.   And see *Reed* v. *The Yaka,* 373 U. S. 410, 414.

[23] *Davis* v. *American President Lines,* 106 F. Supp. 729, 730. For other decisions recognizing such a quasi-contractual right of indemnity under federal maritime law, see, *e. g., Parenzan* v. *Iino Kaiun Kabushiki Kaisya,* 251 F. 2d 928, cert. denied, *sub nom.*

We express no opinion on the validity of this indemnity theory or its application to this case, but hold only that Marine Terminals is not foreclosed by any decision of this Court from raising it in the District Court. We have cautioned that "in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate," *Weyerhaeuser S. S. Co.* v. *Nacirema Operating Co.*, 355 U. S. 563, 569.[24] But that proscription in terms applied only "in the area of contractual indemnity" under *Ryan*. In *Ryan* itself we specifically did "not meet the question of a noncontractual right of indemnity or of the relation of the Compensation Act to such a right." 350 U. S., at 133.[25] By leaving open the question of such an indemnity action by the shipowner against the stevedoring contractor, *a fortiori* we did not decide anything with respect to such an action by the stevedoring contractor against the shipowner.[26]

*International Terminal Operating Co.* v. *Iino Kaiun Kaisha,* 356 U. S. 939; *American President Lines, Ltd.* v. *Marine Terminals Corp.*, 234 F. 2d 753, cert. denied, 352 U. S. 926; *Berti* v. *Compagnie de Navigation Cyprien Fabre*, 213 F. 2d 397; *States S. S. Co.* v. *Rothschild Int'l Stevedoring Co.*, 205 F. 2d 253; *United States* v. *Rothschild Int'l Stevedoring Co.*, 183 F. 2d 181; *Standard Oil Co.* v. *Robins Dry Dock & Repair Co.*, 32 F. 2d 182; *McFall* v. *Compagnie Maritime Belge*, 304 N. Y. 314, 107 N. E. 2d 463.

[24] See also *Italia Societa per Azioni di Navigazione* v. *Oregon Stevedoring Co.*, 376 U. S. 315, 320.

[25] See also 350 U. S., at 132, n. 6. The *Ryan* opinion also recognized the difference between, and treated separately, the noncontractual right of indemnity and the claim for contribution from a joint tortfeasor. *Id.*, at 133.

[26] Some have thought that the exclusivity of the employer's statutory liability to the employee would prevent the shipowner from asserting a right of indemnity against the stevedoring contractor based on the latter's wrong to the employee. See, *e. g.*, *Ryan, supra,* at 142 (BLACK, J., dissenting); *Brown* v. *American-Hawaiian S. S. Co.*, 211 F. 2d 16; *Slattery* v. *Marra Bros.*, 186 F. 2d

Because, as we hold today, § 33 of the Longshoremen's and Harbor Workers' Compensation Act is not the exclusive source of the stevedoring contractor's remedies against the shipowner, and the former may have a cause of action in tort for the compensation payments caused by the shipowner's negligence, we reverse the judgment of the Court of Appeals and remand this case to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

---

134, cert. denied, 341 U. S. 915. But there is no such barrier, of course, to a direct action by the stevedoring contractor against the shipowner.