**Pasquale QUADRINO, Plaintiff,**

**v.**

**The SS THERON, her engines, boilers, tackle, furniture and appurtenances thereto, N. V. Koninklijke Nederlandsche Stoomboot Maats Amsterdam, Defendant and Third-Party Plaintiff,**

**v.**

**MAUDE JAMES, INC., Third-Party Defendant.**

**No. 66 Civ. 3991.**

United States District Court,
S. D. New York.

Feb. 9, 1970.

Sergi & Fetell, by Benjamin Sergi, Brooklyn, N. Y. for plaintiff.

Daniel J. Coughlin, by George J. Conway, New York City, for third-party plaintiff.

Foley, Grainger & Darby, by Konrad M. Michelsen, New York City, for third-party defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### The Facts Disclosed on Trial

Plaintiff longshoreman initiated this action against defendant shipowner, Royal Netherlands Steamship Company, to recover damages for injuries sustained while working as a hatch boss in the lower hold of the "SS THERON". A jury returned a verdict of $20,000 in favor of plaintiff on his claims of negligence and unseaworthiness and this court entered a judgment in that amount on December 15, 1969.

Royal Netherlands, as third-party plaintiff, impleaded the stevedoring company Maude James, Inc., plaintiff's employer, as third-party defendant and now seeks indemnity for its liability to plaintiff. Maude James counterclaimed and asks for costs and expenses, including attorney's fees, incurred in defending this lawsuit. The issues in this third-party action were reserved to the court by consent.

The evidence adduced at trial tended to establish, and the jury could have reasonably found, the following facts. On September 28, 1966 plaintiff was employed by Maude James, Inc. and was working as a hatch boss aboard the "SS THERON" supervising a gang of longshoremen in the stowing of cargo in the aft end of the lower hold. Early that morning, as part of his duties as hatch boss, he made a cursory inspection of the hold, including several bilge covers, to ascertain that the work area was generally safe for his men. He found the bilge covers in apparent good order.

There are several bilge covers along the deck plating near the skin, or wall, of the ship on each side of the aft lower hold. These bilge covers are perforated, quarter-inch-thick steel plates placed over the bilge openings in the floor of the hold, in a slightly depressed alley which runs the length of the hold on each side of the ship. The bilge covers are bolted to metal straps that are themselves welded underneath the surrounding deck plating and protrude out into the opening or hold. The bilge proper is about one and one half feet below the deck.

During the afternoon of September 28, plaintiff had been directing the operator of a hi-lo forklift machine in the

stowing of cargo in the hold. This machine is a four-wheeled vehicle weighing approximately two tons and customarily used in such fashion to move heavy loads. As plaintiff was walking backwards towards a corner of the aft hold and waving the operator towards him, he stepped on a bilge cover that gave way beneath him. Plaintiff stepped into the bilge and injured his right knee and thigh.

Uncontroverted expert medical testimony was to the effect that plaintiff consequently was suffering a chronic sprain of the right knee and a traumatic myositis ossificans affecting the hamstring muscles of the right thigh proximal to the knee joint, and thereby sustained a permanent disability involving the right knee and thigh of 10–20%.

Chief Mate Barend Coster's deposition, read into the record, disclosed that he made an inspection of the bilge cover in question on the day following the accident. He found that the bilge cover was hanging down on one side and that two or three of the metal straps, although still bolted to the bilge cover, had broken loose where they had been welded to the deck plating. His testimony was also to the effect that he had inspected the bilge covers in the lower hold one week before the accident while the vessel was at sea and found them to be in good condition.

### Third-Party Plaintiff-Shipowner's Claim for Indemnity

The shipowner's claim for indemnity rests upon the assertion that the straps supporting the bilge cover were weakened by the hi-lo operator's negligently driving his heavy machine over it. Although it is possible that negligent operation of the hi-lo machine could have weakened the straps, there was no evidence on the trial that such was the case. On the contrary, the hi-lo operator testified without contradiction, that he never drove his machine over the bilge cover because of the danger of getting stuck in the "alley," or depression. The court believes his testimony, and refuses to adopt the shipowner's speculation as to how the straps were weakened.

The court instructed the jury that plaintiff longshoreman was free from contributory negligence. Having found the hi-lo operator similarly free of negligence, and there being no evidence as to negligence on the part of any other of the stevedore's employees, the court finds no basis for imputing negligence to the stevedore. No claim is asserted of independent negligence on the part of the stevedore. However, neither this freedom from imputed or independent negligence of the stevedore, nor the jury's finding of negligence and/or unseaworthiness of the shipowner and vessel, extinguishes any right to indemnity that the shipowner may have against the stevedore.

■ A stevedore owes a shipowner a duty to perform his services safely under an implied warranty to perform his services in a workmanlike manner. Thus, a stevedore may be free of negligence, and yet fail to perform safely: the implied warranty provides "a basis for liability including negligent and non-negligent conduct alike." Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 320, 84 S.Ct. 748, 751, 11 L. Ed.2d 732 (1964). Similarly, even where the shipowner is at fault, the stevedore has a duty to indemnify the shipowner "where the stevedore is responsible for bringing into play the defect which caused a seaman's injury. * * *" Vaccaro v. Alcoa Steamship Co., Inc., 405 F.2d 1133, 1138 (2d Cir. 1968). The stevedore's implied warranty of workmanlike performance is exceedingly high, see Italia Societa, supra, 376 U.S. at 326, 84 S.Ct. 748 (Black, J., dissenting), and imposes a duty to indemnify that is "strictly contractual in nature, existing independently of tort." Feliciano v. Compania Transatlantica Espanola, S.A., 411 F.2d 976, 978 (1969).

■ Here, the defect or dangerous condition that caused plaintiff's injury was that of the metal straps that sup-

ported the bilge cover and broke under plaintiff's weight. Although the stevedore had a

> duty to remedy, or have the ship's crew remedy, a dangerous condition that exist[ed] for a period sufficient for the stevedore to have constructive notice thereof, * * * [it had] no duty to inspect [the] ship before sending its men aboard * * * nor is [the] stevedore responsible for latent defects not discoverable by a reasonable, if only a cursory, inspection.

Vaccaro v. Alcoa Steamship Co., Inc., supra, 405 F.2d at 1138.

■ Plaintiff's cursory inspection of the bilge covers on the morning of September 28 was reasonable and in accordance with his duties as hatch boss, and disclosed no defect or dangerous condition. The stevedore had no actual or constructive notice thereof, nor could it have had under the circumstances. The court concludes as a matter of law that the stevedore did not breach its duty of workmanlike performance with respect to the defect or dangerous condition that caused plaintiff's injury, and that therefore the shipowner is not entitled to indemnity from the stevedore.

### Third-Party Defendant-Stevedore's Claim for Costs and Expenses

In its counterclaim in the third-party action, the stevedore seeks to recover the costs and expenses of this litigation, including attorney's fees on the authority of the recent Supreme Court decision in Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969). There a stevedore had paid workmen's compensation to the widow of a longshoreman under the Longshoremen's and Harbor Worker's Act, and sued the shipowner for reimbursement. The Court held:

> that federal maritime law does impose on the shipowner a duty to the stevedoring contractor of due care under the circumstances, and does recognize a direct action in tort against the shipowner to recover the amount of

compensation payments occasioned by the latter's negligence.

*Id.* at 416–417, 89 S.Ct. at 1151–1152. Here, the stevedore does not seek to recover compensation payments made to plaintiff, but merely the costs and expenses, including attorney's fees, incurred by its being forced to participate in and defend this lawsuit, on the theory that the breach of the shipowner's duty of care "gives rise to a cause of action for any damages proximately caused." *Federal Marine Terminals, supra,* at 415, 89 S.Ct. at 1150. It seems clear that such costs and expenses are reasonably foreseeable damages flowing from a breach of the shipowner's duty of care, for which the stevedore may recover.

However, the shipowner's duty to the employer is not the same as that to the employee: "The shipowner does not owe to the stevedoring contractor the absolute duty of seaworthiness owed to individual longshoremen." *Federal Marine Terminals, supra,* at 415, 89 S.Ct. at 1150. The jury's verdict for plaintiff, based on a finding of negligence and/or unseaworthiness, is consequently not helpful in determining whether the shipowner committed a totally independent breach of its duty to the stevedore.

■ That duty, as the Court noted, has been found by two California District Courts to consist of at least those obligations owed to business invitees or independent contractors, who come on the premises to perform services for the shipowner. *Federal Marine Terminals, supra,* at 416–417, n. 18, 89 S.Ct. 1144, 1151 and cases and authorities cited therein. Among these obligations are those of giving:

> the stevedoring contractor reasonable warning of the existence of any latent or hidden danger which has not been remedied and is not usually encountered or reasonably to be expected by an expert and experienced stevedoring company in the performance of the stevedoring work aboard the ship, if the shipowner * * * in the exercise of ordinary care under the circumstances, should know of the exist-

ence of such danger, and the danger is one which the shipowner should reasonably expect a stevedoring contractor to encounter in the performance of the stevedoring contract.

*Id.* citing Hugev v. Dampskisaktieselskabet International, 170 F.Supp. 601, 610–611 (S.D.Cal.1959), aff'd sub nom., Metropolitan Stevedore Co. v. Dampskisaktieselskabet International, 274 F.2d 875 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960). See W. Prosser, Law of Torts, 402–405 (3rd ed. 1964).

█ From the foregoing discussion of the facts and from the deposition of Chief Mate Coster the court finds that: the shipowner caused an inspection of the bilge covers to be made one week before the accident, presumably because it was expected that the stevedore's employees would be working on or around them; that the inspection disclosed nothing of the condition of the metal straps of the bilge cover in question; that the straps must have been in a weakened or defective condition prior to breaking under plaintiff's weight; that such condition was not caused by the operation of a heavy hi-lo machine over the bilge cover; that the only possible alternative explanation for their condition, on the evidence presented, is that of normal wear and tear in the use to which they were put; that a reasonable inspection of the bilge cover and the straps should have disclosed the defective condition of the straps; that the stevedore did not know, and should not have known, of the defective condition; and that the shipowner breached its duty of due care under the circumstances by failing to properly inspect and discover the defective condition of the straps.

The court concludes that the stevedore is entitled to recover reasonable expenses and costs, as well as attorney's fees, incurred in defending this lawsuit. Third-party defendant Maude James, Inc. is to submit an affidavit of such costs, expenses, and fees to the court on or before February 16, 1970, on five days' notice. The foregoing shall constitute this court's findings of fact and conclusions of law. Rule 52(a) Fed.R. Civ.P. See order of the court entered this day.