**HOUSTON GENERAL INSURANCE COMPANY**

v.

**OFFSHORE LOGISTICS, INC.**

**Civ. A. No. 82–5882.**

United States District Court,
E.D. Louisiana.

May 30, 1984.

Wilton E. Bland, III, Roch P. Poelman, Dean Sutherland and Richard Simses, Herbert & Abbott, John F. Young, New Orleans, La., for plaintiff.

Phelps, Dunbar, Marks, Claverie & Sims, Clayton G. Ramsey, Deborah J. Winegard, New Orleans, La., for defendant.

## OPINION

ARCENEAUX, District Judge.

This is an action under § 33(b) of the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (the Act), in which a compensation carrier alleges that it is the assignee of the rights of an injured longshoreman, and therefore proceeds against a third party vessel owner whose negligence allegedly caused those injuries. The case was tried to the Court without a jury on November 3, 1983, and taken under submission. The Court now issues its opinion in which it finds that because the plaintiff failed to demonstrate that it was assigned the rights of the injured longshoreman, the plaintiff may not assert longshoreman's rights against the defendant. Accordingly, judgment will be entered in favor of the defendant.

## FACTS

Plaintiff in this matter, Houston General Insurance Company (Houston General), is a foreign insurance company authorized to do and doing business within the State of Louisiana and within the jurisdiction of this Court. Houston General was the Longshoremen's and Harbor Workers' Compensation carrier for Arrow Contractors of Jefferson, Inc. (Arrow), the employer of Mr. Charles Miller. Defendant in this matter, Offshore Logistics, Inc. (Offshore Logistics), was and is now a domestic marine transport corporation authorized to do business within the State of Louisiana and within this Court's jurisdiction. Offshore Logistics was the owner and operator of the M/V STONEWALL JACKSON on November 16, 1980. Jurisdiction and venue are uncontested.

To facilitate the conduct of its oil exploration and development activities, the Marathon Oil Company time chartered the STONEWALL JACKSON from Offshore Logistics to provide certain offshore services to Marathon platforms in the Gulf of Mexico. Marathon also engaged Arrow to provide roustabouts to perform work on its platforms. Pursuant to this contract, on November 16, 1980, Miller, an employee of Arrow, was assigned to the STONEWALL JACKSON to assist in unloading cargo from the various Marathon platforms for transport to shore. Miller was injured when a wave washed over the stern of the STONEWALL JACKSON and pushed a large box against him, pinning his leg to the deck. Miller was then transported to the hospital where he received medical treatment for the injury to his leg.

Miller filed a claim for compensation with the deputy commissioner of the De-

partment of Labor. Houston General voluntarily made temporary disability payments to Miller from November 17, 1980 until July 12, 1981, in the amount of $332.79 per week for a total of $11,314.86. Houston General also paid $7,584.40 of Miller's medical expenses. On May 25, 1982, Houston General made a final disability payment to Miller in the lump sum of $27,-288.78. All told, Houston General paid $38,603.58 either directly to Miller or on his behalf.

Six months after receiving his final lump sum payment, Miller had not filed suit to recover for his injuries against any third parties. Consequently, on December 22, 1982, Houston General filed this suit against Offshore Logistics, alleging that "33 U.S.C. Section 933(b) of the LHWCA grants an assignment in favor of the employer to recover the compensation benefits tendered by the employer to the injured employee ... [and that] Section 933(h) of the Act subrogates the employer's compensation insurance carrier to all rights of the employer." *Complaint*, at ¶ VIII. However, in neither its complaint nor in the pretrial order did Houston General allege that because, as Arrow's compensation carrier, it had paid Miller compensation benefits, it was entitled to indemnity therefor from Offshore Logistics. Indeed, in its post-trial memorandum to the Court, Houston General asserted that "this action has never been pled as an indemnity action by Houston General. All pleadings filed prior to this action were styled as an assignment." Plaintiff's *post-trial memorandum of law*, Record, document no. 32 at 10. Strictly speaking, Houston General is asserting (through Arrow) only the rights of Charles Miller, and not its own. To have a right of action against Offshore Logistics, Houston General must show that, under the Act, it acquired Miller's rights. If it has not so gained Miller's rights, then Houston General has failed to state a claim against Offshore Logistics. Consequently, the dispositive issue before the court is whether Houston General was validly assigned the rights of Charles Miller against Offshore Logistics.

## LAW

■ The Longshoremen's Act provides a comprehensive scheme governing the rights of an injured longshoreman. If, as is generally true in cases where a longshoreman files a claim under the Act, and his employer does not contest liability, the employer must pay compensation to the disabled longshoreman within two weeks of learning of his injury, 33 U.S.C. § 914, 20 CFR 702.231–702.232, and must file an appropriate form, Form LS–206, with the Deputy Commissioner of the Department of Labor. 33 U.S.C. § 914; 20 CFR 702.-234.

When an employer controverts a compensation claim or the injured longshoreman contests actions taken by the employer with respect to his claim, the dispute may be resolved in administrative proceedings. 33 U.S.C. § 919. If the dispute cannot be resolved informally under procedures developed by the Department of Labor, 20 CFR 702.301–702.319, the contested claim will proceed to a formal hearing before an administrative law judge, which culminates in the entry of an order by the Deputy Commissioner "reject[ing] the claim or mak[ing] an award in respect of the claim." 33 U.S.C. §§ 919(c), 919(e). However, employers are not required to contest their liability in order to obtain a formal compensation award. Department of Labor regulations permit an employer who makes voluntary payments to obtain a compensation order upon request if there is no disagreement among the parties. 20 CFR 702.-315(a). An order making an award, referred to as "a compensation order," 33 U.S.C. § 919(e), is reviewable by the Benefits Review Board, 33 U.S.C. § 921(b), and enforceable in federal court. 33 U.S.C. § 921(d). An employer's failure to make timely payments under a compensation order results in a substantial penalty. 33 U.S.C. § 914(f).

■ Although workers' compensation generally constitutes a longshoreman's exclusive recovery from his employer, a long-

shoreman who accepts compensation does not thereby relinquish any claim against a third party. 33 U.S.C. § 933(c). Under § 33(b) of the Act, however, a longshoreman who accepts "compensation under an award in a compensation order" must sue the third party within six months, or not at all. If the employee fails to bring suit within this period, his cause of action is irrevocably assigned to his employer. See *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed. 472 (1981).[1] Further, under § 33(h) of the Act, a compensation carrier who makes payments to the injured longshoreman is subrogated to the rights possessed by the employer against third persons. *Landon v. Leif Hoegh & Co., Inc.*, 521 F.2d 756 (2nd Cir.), *cert. denied* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642, *reh. denied* 424 U.S. 935, 96 S.Ct. 1150, 47 L.Ed.2d 343 (1975).[2]

The Supreme Court has made it clear that an employer's payment of voluntary compensation benefits to an injured longshoreman does not constitute an award in a compensation order which results in an assignment under § 33(b) of the Act. *Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983). In *Pallas Shipping*, the employer voluntarily made compensation payments to the injured longshoreman and filed a LS–206 "Payment of Compensation Without Award" form with the Department of Labor. Payments ended two years later when the employer filed a LS–208 "Compensation Payment Stopped or Suspended" form. The Court held that the longshoreman's acceptance of voluntary compensation payments along with the filing of the Forms LS–206 and LS–208 with the Department of Labor did not give rise to an agreement under § 33(b) of the Act. 103 S.Ct. at 1996. The Court reasoned that

Section 33(b) triggers an assignment of an injured longshoreman's cause of action against a third party *only* after he has accepted an award in a compensation order filed by the deputy commissioner or the Benefits Review Board. *Id.* 103 S.Ct. at 1994. The term "compensation order," the Court stated, refers specifically to an administrative award of compensation following proceedings with respect to the claim. *Id.* In that case no administrative proceedings had taken place and no award had been ordered by the deputy commissioner. The Court found the forms filed by the employer distinguishable from compensation orders in 'form, function and legal effect.' "[T]hey are not issued by the deputy commissioner; they are neither administratively reviewable nor judicially enforceable; and the failure to make timely payments pursuant to the agreement embodied in form LS–206 results in a less substantial penalty than a failure to comply with the terms of the compensation order." *Id.* The Court concluded that nothing in the operation, history, or policies of the Act suggested that the filing of the forms is equivalent to "an award in a compensation order." *Id.* 103 S.Ct. at 1995–96.

## ANALYSIS

Houston General contends that the voluntary payment of compensation benefits to Miller constituted an "award in a compensation order" which resulted in an assignment of Miller's claim to his employer when he failed to bring suit within the next six months. Houston General also contends that when, as Arrow's insurance carrier, it assumed payment of the compensation, it became subrogated to Miller's claim. To support its argument, Houston General points to a letter dated March 22,

---

**1.** § 33(b) provides in full:

"Acceptance of such compensation order under an award in a compensation order filed by the deputy commissioner or [Benefits Review] Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person within six months after such award." 33 U.S.C. § 933(b).

**2.** § 33(h) provides in full:

"Where the employer is insured and the insurance carrier has assumed payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section." 33 U.S.C. § 933(h).

1982 from Glenn H. Woodley, assistant deputy commissioner of the Department of Labor, to Allain F. Hardin, counsel to Houston General. In that letter, Woodley allegedly authorized Hardin to "make a scheduled award payment" of $27,288.78 to Miller, "which sum would represent a compromise of the permanent partial disability ratings of Miller's treating physicians, Doctors Dabezies and Fleming.

At first blush, § 33(b) of the Act, as elaborated by *Pallas Shipping*, would seem to require more than a letter from an assistant deputy commissioner of the Department of Labor to counsel for the employer's insurance carrier. However, according to Houston General, § 33(b) requires only that the Department of Labor ratify the compensation payments to the longshoreman. *Pallas Shipping*, it urges, is not otherwise. *Pallas Shipping*, argues Houston General, held only that voluntary compensation payments, without more, do not constitute a formal award. It did not, however, indicate each and every situation constituting a formal award. The Supreme Court sought only some act of ratification of the compensation payments by the Department of Labor. There, the employer voluntarily made compensation payments to the injured longshoreman; the Department of Labor never signalled its ratification of those payments. Here, the Department of Labor ratified Houston General's compensation payments to Miller in the Woodley letter. Thus, Houston General argues, the letter satisfied the formal award requirement of § 33(b) of the Act. When Miller failed to bring suit against Offshore Logistics within six months of the "award," his claim was assigned to his employer, Arrow. As the subrogee of Arrow's rights, Houston General concludes that it may now proceed directly against Offshore Logistics.

Unfortunately, Houston General's argument cannot succeed. Houston General failed to prove, by a preponderance of the evidence, that the Department of Labor issued an "award in a compensation order" to Miller. Under the Act and accompanying regulations, there are two ways in which such an order can issue. First, where the longshoreman's compensation claim is disputed and the dispute cannot be resolved informally under Department of Labor procedures, the claim proceeds to a formal hearing before an administrative law judge, which culminates in an order by the deputy commissioner rejecting the claim or making an award in respect of the claim. 33 U.S.C. §§ 919(a), 919(e); 20 CFR 702.301–702.319. Second, where the employer does not controvert the compensation claim and makes voluntary payments to the longshoreman, he may obtain a compensation order upon request if there is no disagreement among the parties. 20 C.F.R. 702.315(a). In this case, the Court was not informed whether or not Miller's compensation claim was disputed. If the claim was disputed, Houston General introduced no evidence of a formal hearing before an administrative law judge or of an order of the deputy commissioner making an award in respect of that claim. If the claim was not disputed, Houston General introduced no evidence of either a request or an order of compensation.

The only evidence received by the Court even remotely pertaining to this issue was a document labelled "Houston General Claim Coding Form," which contained a list, indexed by date, of compensation benefits paid to Miller. Plaintiff's Exhibit No. 5. Such a document wholly fails to satisfy the "award in a compensation order" requirement established in § 33(b) of the Act and elaborated upon in *Pallas Shipping*. This document was generated by Houston General, and not by the Department of Labor. It is not a formal administrative award of compensation, but simply a record of compensation payments voluntarily made.

Further, Houston General may not rely on the Woodley letter, as counsel neglected to introduce it into evidence. However, the Woodley letter would not have helped Houston General even had it been received into evidence. The letter represents an agreement which followed informal telephonic discussions between the assistant

deputy commissioner and Houston General, under a procedure established by the Department of Labor. See 20 CFR 702.311–702.319. The regulations allow an employer to obtain a formal compensation order upon request if there is no disagreement among the parties. 20 CFR § 702.315(a). The order is then filed in the office of the deputy commissioner and a certified copy mailed to the parties. 20 CFR § 702.349. The Woodley letter does not constitute an award in a compensation order as contemplated by § 33(b) of the Act. The formal compensation order is the official mandate of the Department of Labor that the employer pay the longshoreman a certain sum in compensation benefits. The Department of Labor can issue the order because it has the power to do so; the employer's consent is not required. The letter, unlike a formal compensation order, has no coercive effect or formal quality. In this case, Houston General failed to produce the formal compensation order. The Court can only assume that Houston General neglected to obtain such an order. Contrary to Houston General's reading of *Pallas Shipping*, the Woodley letter cannot take its place.

Thus, Houston General failed to show, by a preponderance of the evidence, that the Department of Labor granted Miller an "award in a compensation order" under § 33(b) of the Act. Accordingly, the rights of Miller were never assigned to Houston General. Houston General may have gained a right to indemnity from Offshore Logistics by assuming Miller's compensation payments. See *Federal Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969). However, Houston General never pleaded such a right to recovery. Indeed, it explicitly declined to advance the indemnity theory. In fact, counsel for Houston General went so far as to "pray that this Honorable Court hold that because no indemnity claim has been pled, no trial on such claim could have been held at that time." *Plaintiff's post trial memorandum*, Record, document no. 32 at 12–13. Therefore, the Court expresses no opinion on the merits of any possible claim for indemnity.

For the reasons stated above, judgment will be entered in favor of defendant, Offshore Logistics, and against plaintiff, Houston General Insurance Company.