Frank CARIFFE, Plaintiff,

v.

**P/R HOEGH CAIRN and M/V CAIRN, Defendants.**

No. 90 CV 0082 (ERK).

United States District Court, E.D. New York.

June 13, 1993.

Bert Taras, Brooklyn, NY, for plaintiff.

Francis X. Byrn, Haight, Gardner, Poor & Havens, New York City, for defendants.

## MEMORANDUM & ORDER

KORMAN, District Judge.

Plaintiff, Frank Cariffe, a longshoreman employed by the Universal Maritime Service Stevedoring Company (UMS), was injured by inhaling Metanil Yellow, a corrosive powered coal tar dye (Yellow Acid 36), as drum lids came loose while he was removing the drums from inside a 40–foot container at Brooklyn Pier # 9. The drums were originally stuffed, closed and placed in the container and then loaded onto the defendant's vessel, the M/V Hoegh Cairn (CAIRN), by an independent stevedoring company in Bombay, India. The

Bombay stevedore stowed the container on the port side of the ship's top deck.

On June 19, 1987, the day of its arrival in Brooklyn, the vessel discharged its cargo and then set sail again. On June 25, 1987, some six days later the container containing the chemical-filled drums was opened and unloaded by longshoremen employed by the Universal Maritime Service Stevedoring Company. While CAIRN acknowledged for the purpose of this motion that it was aware that the cargo included Metanil Yellow and that the chemical was hazardous, it concededly did not label or placard the container to indicate that the contents of the drums were hazardous. CAIRN also conceded for the purpose of this motion that the cargo was in fact on M/V Hoegh Cairn's dangerous cargo manifest and that the manifest had not been provided to UMS. UMS, however, was provided with a general cargo manifest which included an entry of "100 DRUMS. SYNTHETIC ORGANIC/COALTAR DYES, METANIL YELLOW G–CONC (ACID YELLOW 36)". Moreover, photographs of the drums, taken by the UMS Pier Superintendent shortly after the accident, show that the drums had the words "METANIL YELLOW G ..., ACID YELLOW" stenciled on their sides and also appeared to have some kind of "Warning" label affixed to them. The photographs additionally reveal that the drums were damaged and in poor condition.

CAIRN moves for summary judgment on the ground that it was not required to advise UMS that Metanil Yellow was a hazardous substance. According to CAIRN, its obligation to advise the stevedore of the presence of a hazardous substance in the cargo was limited to those substances set out in the "Hazardous Materials Table" (HMT) in the regulations for the transportation of hazardous materials. At the time of these events, Metanil Yellow was not included in the HMT, but was only listed on the "Optional Hazardous Material Table" (OHMT). See 49 C.F.R. §§ 172.101–.102 (1987). The purpose of the OHMT is to list materials that "are subject to regulation under widely applied international standards. They are listed ... in the interest of providing consistency with those standards and to alert persons offering or accepting these materials for transportation that the materials may be subject to regulation in international transport." 49 C.F.R. § 172.102 (1987). The OHMT section "does not designate materials as hazardous materials and it does not specify packaging requirements, exceptions or limitations. They are made only in § 172.101." Id. Section 172.-101 contains the Hazardous Materials Table that lists all the materials that are designated "as hazardous materials for the purpose of transportation of those materials in commerce."

Metanil Yellow was added to the Hazardous Materials Table sometime after the plaintiff was injured. Because it was not listed in the HMT at the time of the incident, CAIRN argues that it did not have a duty to document the chemical on the dangerous cargo manifest or placard the container. CAIRN argues that its only obligation was to list the cargo on the general cargo manifest. In addition, CAIRN asserts that under the regulations, it was the primary duty of the stevedore to provide for the safety of the plaintiff. See 29 C.F.R. §§ 1917.22, 1918.1, 1918.86 (1987). These regulations place upon the stevedore, inter alia, the duty to ascertain from shipping documents what hazardous cargo, if any, are to be handled, determine the nature of the hazard, inform his employees, the longshoremen, of the hazard and implement precautionary measures to prevent exposure to the hazard.

 The law relating to the liability of a shipowner to a longshoremen is discussed at length in Scindia Steam Navig. Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). There is no need to repeat that discussion here. Suffice it to say that, notwithstanding the substantial changes made by the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, the right of a longshoreman "to recover from the shipowner for negligence was preserved in § 905(b), which provided a statutory negligence action against the ship." Id. at 165, 101 S.Ct. at 1621. While the stevedore has the primary duty of ascertaining the nature of the cargo and taking the precautions necessary to ensure the safety of its employees, "the [ship]owner is not ab-

solved from liability if it is at fault also." *Tragni v. Establissement Maritime Camille*, 705 F.2d 92, 93 (2d Cir.1983); *Di Rago v. American Export Lines, Inc.*, 636 F.2d 860, 865 n. 3 (3rd Cir.1981) ("[T]he regulations did not subtract from the vessel owner's common law responsibility"); 29 C.F.R. § 1918.2(b) (1987). Simply stated, the shipowner owes the stevedore and his longshoremen employees the duty of exercising due care "under the circumstances." *Federal Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969).

■ If the containers here were being unloaded on the vessel, the shipowner would have been obligated to warn the stevedore of any hidden dangers of which the shipowner was aware. A "hidden danger" is one which is not known to the stevedore and which would not become known to the stevedore if the latter was competent in the performance of its work. *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622. While there is some dispute as to the nature and extent of the shipowner's obligation to look for and correct any hidden danger in the cargo or in the manner in which the cargo is stowed, it seems clear that the shipowner has a duty to warn the stevedore of any hidden danger of which it has actual knowledge. *See Woods v. Sammisa Co.*, 873 F.2d 842, 852 (5th Cir.1989), *cert. denied*, 493 U.S. 1050, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990); *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 496 (3d Cir.1987) *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988). Indeed, to the extent that these cases suggest that the shipowner is at least obligated to warn the stevedore of known hidden dangers in a container, they are consistent with the broader common law duty that applies to land based carriers of containers:

> While there is some conflict of authority on the particular point, and some variation as to the precise ground of liability, it has been held in a considerable number of cases that a railroad which receives another road's car loaded and delivers it to a consignee owes to the latter and his employees the duty to make a reasonable inspection thereof, to determine whether it may safely be unloaded, and to give special warning of a defective condition in the car where the railroad can readily discover the defect by such an inspection, which a less experienced person would not be so likely to do, and accordingly may become liable for injuries sustained, by reason of a discoverable defect, by one engaged in unloading the car.

Annotation, *Liability of railroad for injury to or death of one other than its employee due to defective condition of car received from another railroad which he was unloading or loading*, 126 A.L.R. 1095 (1940).

The common law duty to warn, as applied in the present context, is codified by regulations that require the shipowner to list in the dangerous cargo manifest certain hazardous chemicals that are on the HMT, and to placard the container with appropriate warnings. Even though all cargo is listed on the general cargo manifest, such a listing may be insufficient to alert the stevedore to the dangerous nature of the materials. The additional requirements, mandated by the regulations, indicate that even though the stevedore is considered expert, experienced and responsible for examining the general cargo manifest to determine and to prepare for the potential dangers, he might still not be alerted to the existence of hazardous cargo if he were provided with nothing more.

■ While the regulations may enhance the common law obligation of the vessel by requiring the vessel owners to document materials on the HMT without regard to whether it would otherwise become known to the stevedore, they do not detract from the shipowner's duty to notify the stevedore of any other hazardous material of which it is aware by listing the chemical on the dangerous cargo manifest and providing it to the stevedore and placarding the container. Moreover, because it is the defendant's role in turning the container over to the stevedore rather than its status as the owner of the vessel, that gives rise to the duty to warn, the breach of that duty is not excused because the container was unloaded after it was removed from the ship. As Dean Prosser has written:

In many situations, a failure to disclose the existence of a known danger may be the equivalent of [a negligent] representation, where it is to be expected that another will rely upon the appearance of safety.... [T]he seller or supplier of a chattel who fails to disclose its dangerous nature or its concealed defects, each may be liable to the person with whom he deals, or to others to whom harm is to be expected through that person's reliance. The "something like fraud on the part of the giver," which the courts have found so frequently in these cases, consists in permitting another to rely upon a tacit assurance of safety, when it is known that there is danger.

William L. Prosser, *The Law of Torts*, § 33, at pp. 179–80 (4th ed. 1971) (footnotes omitted).

▪█ Metanil Yellow is admittedly hazardous and CAIRN knew as much when it docked in Brooklyn. Unless it was obvious to UMS that this substance was present in drums *and* that it was hazardous or that UMS would discover the hazardous nature of the contents by the exercise of reasonable care, CAIRN had a duty to make available to UMS the dangerous cargo manifest which listed Metanil Yellow and which would have alerted the stevedore to the hazardous character of the cargo. *Scindia*, 451 U.S. at 165, 101 S.Ct. at 1621. As the highest court of New Jersey observed in a closely analogous case:

It is not the case of the failure to discover a defect after reasonable inspection, but a situation presenting knowledge of a dangerous condition ... for the purpose of transit, and a failure to foresee that without some exhibition of ordinary and reasonable prudence, by notice indicating the latent danger, damage might naturally result to one lawfully engaged in unloading the freight.

*Griffin v. Payne*, 113 A. 247, 248 (N.J.1921).

Because it is not possible to determine on this motion for summary judgment whether the UMS knew that the container contained a hazardous substance or whether UMS would have otherwise discovered it by the exercise of reasonable care, it is for the trier of fact to decide whether CAIRN breached its duty of reasonable care. Similarly, it is for the trier of fact to determine whether the labels on the drums, which would not have been seen until the longshoreman had unpacked other items in the container, were "too little, too late."

Accordingly, for the foregoing reasons, the defendant's motion for summary judgment is denied.

SO ORDERED.