CORRECTED OPINION

**Philip C. WILD, Jr., Plaintiff-Appellant,**

**v.**

**LYKES BROTHERS STEAMSHIP COR-PORATION, Defendant-Appellee.**

**No. 80–3161**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.*
Unit A

Dec. 21, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Barker, Boudreaux, Lamy, Gardner & Foley, Harold J. Lamy, New Orleans, La., for plaintiff-appellant.

Terriberry, Carroll, Yancey & Farrell, John A. Bolles, New Orleans, La., for defendant-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

Plaintiff, Philip C. Wild, Jr., instituted this action pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b), to recover damages for personal injuries sustained by him while working aboard the S.S. DR. LYKES, a lash-type cargo vessel owned and operated by defendant, Lykes Brothers Steamship Corporation (Lykes). At the time of his injury, Wild was employed by Dixie Machine and Metal Works, a company engaged by Lykes to conduct extensive repairs on the S.S. DR. LYKES. Wild contends the injuries he sustained when he slipped from a ladder on the vessel, allegedly covered with a heavy layer of grease, were caused by the negligence of the shipowner Lykes. The ladder, an appurtenance of the vessel itself, consisted of four or five rungs of tubular piping devoid of non-skid properties.

Both parties concede at the time of his injury, Wild was an employee covered by the LHWCA. They do not agree, however regarding the cause of the alleged presence of grease on the ladder, nor as to the availability of the gangway as an alternate method of reaching Wild's worksite.

The District Court granted summary judgment for Lykes, finding Dixie personnel, who had knowledge of the existence of the ladder, were in a better position than Lykes to prevent its use by providing an alternate means of commuting to and from Wild's worksite. It also concluded Dixie was responsible for the elimination of any slippery conditions that may have added to the ladder's potential hazard. In reaching these determinations, the District Court applied a negligence standard governed by concepts of a landowner's duties to his invitees as enunciated in § 343A(1) of the Restatement (Second) of Torts to interpret § 905(b) of the LHWCA. *See Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233, 1238 (5th Cir. 1977).

Wild contends the Supreme Court's recent decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), merits consideration in the case at bar.[1] He urges although *Scindia* held the shipowner had no general duty under § 905(b) by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that developed during ship-loading, and correspondingly, ship repair operations, this case does not fit that mold. Rather than develop after the ship repair company began its work, Wild contends the defect, *i. e.,* the tubular shaped non-skid-proof rungs of the ladder and the greasy conditions, exist-

---

1. These contentions were raised in response to our request for supplemental briefs regarding the applicability of *Scindia*.

ed before Lykes turned the ship over to Dixie, the repair company.

In *Scindia,* the Supreme Court reviewed application of land-based standards of negligence adopted by this Court, the Second Circuit, and others and those enunciated by the Ninth Circuit. See *Santos v. Scindia Steam Navigation Co.,* 598 F.2d 480 (9th Cir. 1979). The Supreme Court concluded it could not wholly agree with application of either standard. *Scindia,* 451 U.S. at 168, 101 S.Ct. at 1622, 68 L.Ed.2d 1 (1981).

With respect to the Ninth Circuit standard, the Court would not agree the vessel's duty to the longshoreman requires the shipowner to inspect or supervise the stevedoring operation. *Id.*

The Court did hold that when the stevedore comes aboard the vessel to start its cargo operations, the shipowner owes to the stevedore and its employees these duties: First, it is the duty of "... exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." Second, is the duty "[to] warn the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should have been known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." 451 U.S. at 166–67, 101 S.Ct. at 1621, 68 L.Ed.2d at 12.

The Supreme Court, however, recognized "there are circumstances in which the shipowner has a duty to act where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in cargo operations." *Id.* They concluded that if the shipowner had actual knowledge of the defect and the stevedore was contin-

uing to use it, and if the stevedore's decision to continue to use it was so obviously improvident that the shipowner should realize the defect presents an unreasonable risk of harm to the longshoremen, then in such circumstances, the shipowner had the duty to intervene and repair the ship's defect. *Id.* at 175, 101 S.Ct. at 1626, 68 L.Ed.2d at 17. The same would be true if the defect existed from the outset, of which the shipowner must be deemed to have had constructive knowledge. *Id.*

Although the Supreme Court did not overrule application of our *Gay,* land-based, standards of negligence when analyzing LHWCA § 905(b) actions,[2] the Court's refusal to explicitly agree with either our standard or the Ninth Circuit's standard warrants our remanding this case. Because not tried under it, we are unable to say whether the District Court would have reached the same conclusion had it analyzed the case in light of *Scindia.* Accordingly, we remand for reconsideration of the motion for summary judgment and any appropriate action resulting therefrom in light of *Scindia* and such other recent developments as may be found pertinent.

REVERSED AND REMANDED.

---

2. Justice Powell's concurring opinion, note 1, asserts that continued reliance on the Restatement standard as adopted by the Second, Fourth and Fifth Circuits is consistent with the

"plain intent of Congress to impose primary responsibility on the stevedore," and the Court's opinion is not "inconsistent with it". 451 U.S. 180, 101 S.Ct. 1628, 68 L.Ed.2d 20.