Dearal STASS, Plaintiff-Appellant,

v.

AMERICAN COMMERCIAL LINES,
INC. and the BARGE "ACBL–920",
Defendants-Appellees.

No. 80–3704
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1982.
Rehearing and Rehearing En Banc
Denied Sept. 30, 1982.

Kenneth B. Krobert, Chalmette, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., Robert M. Contois, Jr., for defendants-appellees.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant, Dearal Stass, a longshoreman, brought this action pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b) to recover damages for injuries he sustained while working aboard a barge owned by defendant-appellee, American Commercial Lines, Inc. At the completion of a non-jury trial, the District Judge, without a written opinion, granted judgment in favor of the barge owner, American Commercial Lines, Inc. For the reasons which follow, we reverse and remand.

In 1978 Dearal Stass was a first class shipfitter employed by the Louisiana Dock Company. On the day of his accident, January 11, 1978, he was assigned to work aboard Barge ACBL–920. His task, along

with a few other longshoremen, was to open grain doors and inspect the rain seals for damage. There were approximately eight such doors on this flat top barge, comprising two rows with about a foot and a half between the rows. What would otherwise have been an innocuous task ended when Stass and his co-worker encountered trouble when they attempted to open the third set of doors near the peak of the barge. It was their first day on the barge. Try as they might, the door would not open. Neither Stass nor his co-worker, a tacker, had knowledge of the doors being inoperable. While trying to lift open the defective door, Stass positioned himself on the 18 inch platform between the two rows of grain doors. The set of doors directly behind him had already been opened. On the surface of the barge and particularly around the area where he was standing, there was a slippery substance of some kind, probably soybean sprout residue. When Stass and the tacker tried again to lift the defective grain door, it came up approximately three feet and no higher. They dropped it. The vibration of the door caused Stass to step back into the slippery substance which caused him to tumble backwards over into the open hatch behind him, falling approximately 16 feet and landing on his heels and tailbone. His injuries were serious.

At trial, the District Judge listened intently to Stass' testimony and that of his tacker. He concluded that for "some lack of more acceptable expression", the plaintiff was contributorily negligent, but not flagrantly so. The District Judge felt obliged to grant judgment in favor of the barge owner because the facts developed during the course of the trial were not sufficient to alter the relationship between barge owner, American Commercial Lines, Inc. and stevedore, Louisiana Dock Company, which would have made the former liable for the plaintiff's damages.

From our understanding of the District Judge's remarks, he decided this case under the traditional rule of land-based negligence which has been applied to numerous § 905(b) suits. The traditional rule unbendingly held that a vessel owner is not liable to the stevedore or its employees for any open and obvious danger aboard the vessel. We acknowledged in *Gay v. Ocean Transport and Trading Ltd.*, 546 F.2d 1233 (5th Cir. 1977), that this view had come under increasing attack and was no longer useful in analyzing section 905(b) cases. We also pointed out that negligence and assumption of risk concepts are "inappropriate in § 905(b) cases." *Id.* at 1242. Instead, we went on record to adopt the more reasonable land-based standards of negligence formulated in the Restatement (Second) of Torts, §§ 342, 343, and 343a (1965). *Id.* We observed, however, by way of explanation that vessel owners did not have the same duties as a landowner and that the propriety of a shipowner's action must be determined by an examination of the peculiarities which gave rise to the plaintiff's cause of action. *Id.* at note 20.

But even if the District Court had meticulously followed our decision in *Gay v. Ocean Transport and Trading Ltd.*, we would still be required to reverse its judgment in light of *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), where the Supreme Court reiterated and expanded its holding in *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), that a vessel owner owes at least two duties to a stevedore and its employees when they board the ship to begin cargo operations or repair work, as was done in the case *sub judice*. The first is a duty to exercise ordinary care to have the vessel and its equipment in such a condition that a reasonably cautious expert stevedore can carry on its operations with reasonable safety. The second is a duty to inform the stevedore of any hazardous conditions aboard the vessel as regards its equipment, that are either known to the vessel owner or should have been known to it in the exercise of ordinary care, that are likely to be encountered by the stevedore in the exercise of its cargo operations and that are unknown to it and would not otherwise be self-evident or expected by it if it displays an acceptable level of competence while doing its work. *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1621. *See also Wild v.*

*Lykes Bros. Steamship Corp.*, 665 F.2d 519, 521 (5th Cir. 1981); *Lemon v. Bank Lines, Ltd.*, 656 F.2d 110 (5th Cir. 1981). Since it is clear from *Scindia* that a vessel owner is under an obligation to turn its vessel over to the stevedore in a reasonably safe condition and is required to warn the stevedore of any malfunctioning of the vessel's gear or equipment, such as the defective grain door in this case, we cannot say with certainty what result the District Court would have reached had it analyzed this case applying the *Scindia* doctrine. Accordingly, we remand this case to the District Court for reconsideration in light of *Scindia* and our recent decisions in *Wild* and *Lemon* and instruct it to make the appropriate law and fact findings.[1]

REVERSED AND REMANDED.

---

1. We are mindful of the long history this case has had in our Court. We have twice remanded this case for a determination as to whether plaintiff-appellant's filing of the notice of appeal was late, and if so, due to excusable neglect. The record on this appeal now shows that the appellant's notice of appeal was filed within the 30 days requirement of Rule 4(a) of the Federal Rules of Appellate Procedure. Because this case has had such a lengthy history in our Court, we remand this case with an admonishment that the District Court expedite its proceedings to dispose of the issues involved herein.