**Frank TRAGNI, Plaintiff-Appellant,**

v.

**ESTABLISSEMENT MARITIME CAMILLE, Defendant-Appellee and Third Party-Plaintiff,**

v.

**ROYAL NETHERLANDS STEAMSHIP CO., (ANTILLES) N.V., Third Party-Defendant.**

No. 1097, Docket 82–7909.

United States Court of Appeals, Second Circuit.

Submitted April 7, 1983.

Decided April 20, 1983.

Morris Cizner, New York City (Zimmerman & Zimmerman, New York City, of counsel), for plaintiff-appellant Frank Tragni.

Joseph F. Ryan, Jr., New York City (Kirlin, Campbell & Keating, New York City, of counsel), for defendant-appellee Establissement Maritime Camille.

Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Frank Tragni appeals from a judgment of Judge Richard Owen, entered on an order granting the motion of defendant-appellee Establissement Maritime Camille ("Camille") for summary judgment and dismissing the complaint. Tragni had charged that injuries he suffered while working as a longshoreman aboard the M/V CAMILLE B., a ship owned by Camille, were the result of the shipowner's negligence. On appeal, Tragni challenges the district court's conclusion that the allegedly unsafe conditions leading to the accident were the sole responsibility of the stevedoring company which employed him, and therefore, as a matter of law, the owner could not be liable. This result is inconsistent with clear precedent in this circuit. Moreover, the record reveals issues of material fact relating to Camille's negligence. Accordingly, we reverse.

## BACKGROUND

The circumstances underlying this dispute are quite simple.[1] On the date of the accident, April 4, 1979, appellant, a longshoreman employed by Northeast Stevedoring Company, was working aboard the CAMILLE B. Some time between 4:00 and 4:30 p.m., Tragni and others were ordered to work in the lower hold of one of the ship's hatches. At that hour, the daylight flooding through the hatch illuminated the

---

1. We are, of course, required to view the facts in the light most favorable to Tragni, the party against whom summary judgment was entered. *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1321 (2d Cir.1975) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)).

entire hold area, including the spot farthest from the center of the hatch. At the end of the hold, there was a ladder used for entry and egress.

At 4:30 p.m., the men commenced discharging the ship's cargo. This consisted of copper bars roughly three feet in length, with a diameter of eight inches at the widest point, and tapered at the ends in a fashion which, along with their color, caused them to be referred to by the appellation "cigars." Each cigar weighed roughly one hundred pounds. They were stored throughout the hold, laid one on top of another. To gain access to the ladder, it was necessary to walk across the mass of piled cigars.

By approximately 6:30 p.m., it became necessary to employ artificial lighting to illuminate the hold. Neither the hold nor hatch contained lighting fixtures. After the Hatch Boss, who was supervising operations in the hold area, notified the ship's crew that more lighting was needed, the crew placed two portable lights on the coaming at the top deck. These provided a measure of illumination in the central, or "square" area of the hatch, but did not fully light the far reaches of the hold. Despite repeated complaints to the ship's crew that the lighting was insufficient, the longshoremen were told no other portable lights were available, and no additional lighting was provided.

At roughly 8:30 p.m., the longshoremen received orders to leave the ship. To do so, they were required to walk on the cargo of cigars, by now in darkness and stacked unevenly, to the ladder. None of the men carried a flashlight. As Tragni approached the ladder, he slipped and fell. Injuries suffered formed the basis of this lawsuit against shipowner Camille, in which Tragni

alleged the unloading of cargo was being supervised by the shipowner, and the latter's negligence was the cause of injury. Appellant claimed Camille had failed to furnish a safe place to work, had neglected to provide adequate lighting, had not provided "suitable, safe, adequate and proper walking surfaces," and had failed to remedy these conditions although there was an opportunity to do so.

Suit was brought pursuant to section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, as amended in 1972, 33 U.S.C. § 905(b).[2] After discovery was completed, Camille moved for summary judgment, claiming it could not be found negligent as a matter of law. Judge Owen agreed, and granted the motion. We now reverse.

## DISCUSSION

In reaching the conclusion that the employer-stevedore—and not the shipowner—bears the duty of ensuring work is carried out only in areas which are adequately lighted, the district court relied upon 29 C.F.R. § 1918.92(c) (1982). That section does indeed place *primary* responsibility upon the employer-stevedore to prevent workers from "enter[ing] dark holds . . . or other places without a flash light or other suitable portable light." *See* 33 U.S.C. § 941(a); 29 C.F.R. §§ 1918.2(a), 1918.3(c) (1982). But the owner is not absolved from liability if it is at fault also. Indeed, we have explicitly held that if the stevedore and shipowner are both guilty of nonperformance of their duties, they may be concurrently negligent. *Lieggi v. Maritime Co. of the Philippines, "M/V Philippine Rizal"*, 667 F.2d 324, 328 & n. 8 (2d Cir.1981); *see also* 29 C.F.R. § 1918.2(b) (1982) (regula-

---

2. Section 905(b) provides, in relevant part:

    (b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indi-

rectly and any agreements or warranties to the contrary shall be void. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

tions do not relieve vessels "from responsibilities or duties now placed upon them by law, regulation or custom").

A shipowner may be held liable if it "knows of the dangerous condition and should anticipate that, even if the condition is obvious, the stevedore will not or cannot correct it and the longshoreman will not or cannot avoid it," yet fails "to take reasonable steps to eliminate or correct the condition." *Lieggi, supra,* 667 F.2d at 328. Reliance upon the stevedore to correct the condition or a decision to "[stand] silently by while the stevedore instruct[s] the longshoremen simply to 'keep working' and 'be careful,' " *id.,* will not relieve the shipowner of liability as a matter of law. *Moore v. M.P. Howlett, Inc.,* 704 F.2d 39, 42 (2d Cir. 1983); *Lieggi, supra,* 667 F.2d at 328; *Lopez v. A/S D/S Svendborg,* 581 F.2d 319, 324 (2d Cir.1978); *Lubrano v. Royal Netherlands Steamship Co.,* 572 F.2d 364, 367 (2d Cir.1978). In these circumstances, whether the owner was negligent is a jury question. *Lieggi, supra,* 667 F.2d at 328.

Applying these principles to the present record, we conclude summary judgment was improper. Appellant has alleged facts which might establish the shipowner's negligence. The ladder was supplied and maintained by the vessel's crew, and permitting the cargo to be stored so that the longshoremen would have to traverse it without proper illumination to reach the ladder may have amounted to countenancing a hazard known to, and avoidable by, the shipowner. No permanent lighting fixtures were in place in any part of the hold. The ship appears to have been carrying only two portable lights, and crewmen were aware the longshoremen had complained these were insufficient. Moreover, there is some evidence that custom and practice in the Port of New York requires the ship's crew, rather than the stevedore-employer, to furnish needed lighting on board ship, and to provide safe access to a ladder for each gang working in a hold. *Cf. Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 176, 101 S.Ct. 1614, 1626, 68 L.Ed.2d 1 (1981) (necessary inquiry is whether custom places continuing duty upon vessel to repair

defective ship's gear used by stevedore in cargo operation). Finally, Tragni and the other members of the crew first entered the hold at a time when natural lighting sufficed, and continued working as the light waned, with the shipowner's acquiescence, although it may have been only the owner who knew there were too few portable lights available to remedy the dangerous condition once it arose. *See Evans v. Transportacion Maritime Mexicana SS "Campeche",* 639 F.2d 848, 856 (2d Cir.1981). Once the longshoremen remained in the hold after dark, egress by way of the ladder created exposure to the dangerous condition.

Appellee of course disputes the proposition that these facts will persuade a jury that negligence on the part of the shipowner has been demonstrated. We do not pass on the merits. But the factual issues are sufficient to create a question for a properly instructed jury. *Heyman v. Commerce & Indus. Ins. Co., supra* note 1. We therefore reverse the judgment below, and remand for further proceedings.