FRANCESCO CRUZ, Respondent, v AMERICAN EXPORT LINES, INC., et al., Appellants.

First Department, January 8, 1985

### APPEARANCES OF COUNSEL

*Michael N. Cotignola* of counsel (*Lilly, Sullivan & Purcell, P.C.,* attorneys), for appellants.

*Martin Lassoff* of counsel (*Morris Cizner* with him on the brief; *Zimmerman & Zimmerman,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

On September 17, 1976, plaintiff, a longshoreman with 15 years experience in the employ of John W. McGrath Corp., a stevedore, was injured aboard the *Export Builder,* a vessel owned by defendant Farrell Lines, when a burlap bale fell off a hi-lo and struck him on the back of his foot.

In his pretrial deposition plaintiff testified that on the day of the accident he was a holdman in a stevedoring gang of eight holdmen and four winchmen discharging cargo in the vessel's

No. 3 hatch. Hatch No. 3 consisted of three vertical levels, similar to three rooms, one on top of the other, the center of each of which, known as the "square of the hatch", had a removable hatch cover instead of a ceiling. The sections of the hatch with a fixed permanent ceiling are called the wings.

From 8:00 A.M. until 3:00 P.M. plaintiff's gang was working in the "upper 'tween deck", the highest of the three vertical levels, discharging general cargo stored in the square of the hatch. The men took their orders from the hatchboss or "Charlie", the winchman, not the ship's crew. Sometime that day, either in late morning or early afternoon, a shoreside cleaning gang had come into the upper 'tween deck and removed all of the dunnage, that is, boards, of varying size, which had been placed on the floor of the square of the hatch to protect the bottom layer of general cargo, and unfastened the lashing wire which tied down bales of burlap stored in the wings. The burlap bales were stacked vertically and separated by dunnage. Before the shore gang departed all the dunnage had been cleared from the square of the hatch.

A hi-lo was then brought into the hatch to carry the bales of burlap to the square of the hatch, where the longshoremen, including plaintiff, would hook them to the crane, which would lift them from the hatch. As the bales were taken to the square, two at a time, the longshoremen would collect the dunnage and put it to the side in a pile for later pickup. Plaintiff was injured when a bale fell from the hi-lo and struck him from behind as it was being carried to the square. Plaintiff, who did not see the bale before it hit him, was told by the winchman that the hi-lo had hit a piece of dunnage, causing the bale to fall off the hi-lo and strike him.

To that version of the accident plaintiff adds only the observation of a fellow gang member, Thomas Aviles, who, in an affidavit, states, "For some reason there was a lot of dunnage on the deck and between the bales [and w]e complained to a mate about the dunnage and he said leave it and the crew would remove it when we stopped work." Aviles also confirmed that the hi-lo hit a piece of dunnage, causing it to tip and the top bale to fall on plaintiff.

Based on plaintiff's own account of the accident defendant moved for summary judgment dismissing the complaint, which motion Special Term denied, finding triable issues of fact as to the manner and cause of the accident. We reverse and grant the motion.

Liability in this case is governed by subdivision (b) of section 5 of the Longshoremen's and Harbor Workers' Compensation Act, as added in 1972 (86 US Stat 1251, 1263, amdg US Code, tit 33, § 902 *et seq.*), which, *inter alia,* abolished unseaworthiness, an historic ground for recovery under the Act, and limited a shipowner's liability to an injured longshoreman to "negligence of a vessel" (US Code, tit 33, § 905, subd [b]).[*] The 1972 amendments were intended "to make the vessel liable for its own negligence, relieving it of liability only for the negligence of those engaged in providing stevedoring services." (*Napoli v Hellenic Lines,* 536 F2d 505, 507.) As the Supreme Court has noted, "Congress intended to make the vessel answerable for its own negligence and to terminate its automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore." (*Scindia Steam Nav. Co. v De Los Santos,* 451 US 156, 168.) The 1972 amendments also substantially increased the compensation benefits due the longshoreman from the stevedore for injuries incurred in the course of his employment. (US Code, tit 33, § 905, subd [b].)

In abolishing the doctrine of unseaworthiness under the Act, "Congress made clear its intent that the courts discard such concepts as no-fault liability and the non-delegable duty to provide a safe work-place and substitute traditional, land-based principles of negligence." (*Giglio v Farrell Lines,* 613 F2d 429, 431.) Thus, under the amendments, it is the stevedore, the longshoreman's employer, and not the shipowner, who is required "to provide a 'reasonably safe' place to work and to take such [precautions] with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to [the] longshoremen." (*Scindia Steam Nav. Co. v De Los Santos, supra,* p 170; US Code, tit 33, § 941.) Furthermore, the shipowner "is not the common employer of the longshoreman and owes no such statutory duty to [him]"; it "may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." (*Scindia Steam Nav. Co. v De Los Santos, supra,* p 170.)

---

[*] In relevant part said section provides: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reasons thereof, may bring an action against such vessel as a third-party in accordance with provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void * * * The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach *thereof at the time the injury occurred. The remedy provided in this subsection* shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

As already noted, in addition to his statutory duty to provide his employees with a reasonably safe place to work, a stevedore must also adhere to those pertinent regulations promulgated to protect the employee's life, health and safety. (US Code, tit 33, § 941.) Thus, under both the statutory and regulatory scheme "the primary responsibility for longshoreman safety is that of the stevedore" (*Lieggi v Maritime Co.*, 667 F2d 324, 328). Section 1918.91 (d) of the Safety and Health Regulations for Longshoring (29 CFR), promulgated by the Occupational Safety and Health Administration, imposes upon the stevedore the obligation to see that "[l]oose paper, dunnage and debris shall be collected as the work progresses and be kept clear of the immediate work area."

Thus, absent contract provision or pertinent regulation or custom to the contrary, a shipowner "has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." (*Scindia Steam Nav. Co. v De Los Santos,* 451 US 156, 172, *supra.*) Of course, a shipowner has a duty with respect to the condition of the ship's gear, equipment, tools and work space to be used in the stevedoring operations to warn of hidden dangers known to it or of which, in the exercise of reasonable care, it should have known (*supra,* p 167). Similarly, a shipowner may be liable where the longshoreman is exposed to an unreasonable risk of harm from a malfunctioning of the ship's gear being used in the cargo operations of which the shipowner had actual knowledge or was chargeable with because the gear was defective from the outset (*supra,* pp 175-176). None of these factors, however, is here present. Plaintiff makes no claim that the dunnage, the ship's equipment, was defective.

Consequently, it was the obligation of McGrath, the stevedore, to provide its employee, plaintiff, with a safe place to work, and to supervise the cargo operation so as to prevent a dangerous condition from arising. More specifically, McGrath had a duty to clear the dunnage from the working area as work progressed and the cargo was being discharged. In the circumstances presented, defendant was not under any obligation to inspect and supervise the longshoring operation being performed at the time of plaintiff's accident since "[i]t would be inconsistent with the Act to hold * * * that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process." (*Scindia Steam Nav. Co. v De Los Santos, supra,* pp 168-169.) Nor, unlike plaintiff's employer, did defendant have

any duty to clear the dunnage from the hatch as the discharging of cargo progressed.

Recognizing that the law does not impose upon a shipowner the duty to monitor the stevedore's work to discover dangerous conditions once cargo operations have begun, absent proof of contractual obligation or custom to the contrary, plaintiff argues that liability may be premised on Aviles' alleged complaint to a ship's mate about the loose dunnage, and the mate's purported response that the longshoremen should "leave it" until the discharge operation was completed. Mere knowledge of a dangerous condition cannot, however, by itself, serve as a basis for shipowner liability. (*Lieggi v Maritime Co.*, 667 F2d 324, 327, *supra*.) Rather, the *"sine qua non* of a ship's liability for an obviously dangerous condition arising during the process of loading or unloading is reasonable anticipation that the longshoremen will not be able to avoid it." (*Giglio v Farrell Lines*, 613 F2d 429, 432-433, *supra*.)

A recent case clearly illustrating the point is *Lubrano v Companhia De Navegacao Lloyd Brasileiro* (575 F Supp 1541). There, the plaintiff, a longshoreman, was injured when he slipped and fell on loose coffee beans in the hold of a vessel during discharge operations. Just as in the present case, the evidence indicated that a coemployee of the plaintiff had purportedly complained to a ship's mate about the condition sometime prior to the accident, and the ship's mate allegedly responded that he would take care of the problem. Despite the mate's actual knowledge of the condition, and his promise to have it cleaned up, the court held that the shipowner did not have any reason to anticipate that the longshoremen could not avoid the condition since they could have easily eliminated the hazard by pushing or sweeping the coffee beans aside.

In so ruling, the District Court cited *Albergo v Hellenic Lines* (658 F2d 66), which involved a longshoreman who slipped and fell on loose rope cuttings during discharge operations. In *Albergo*, in finding for the shipowner as a matter of law, the court held that there was no basis for it to anticipate that the longshoreman could not avoid the rope. Just as the longshoreman could have removed the loose coffee beans by hand in *Lubrano* (*supra*) and the loose rope cuttings in *Albergo*, the longshoremen working with plaintiff in the No. 3 hatch could have, as they were required to do, put the loose dunnage aside. Since this simple housekeeping act would have eliminated the condition there was, as a matter of law, no basis upon which defendant, the shipowner, should have anticipated that the loose dunnage

would not be avoided by the longshoreman. In such circumstances, the shipowner was entitled to rely on the stevedore who is specifically hired for his expertise in coping with the dangers inherent in loading and unloading cargo. "[I]n many cases it would be perfectly reasonable for the shipowner to assume that the stevedore will correct the defect." (*Evans v Transportacion Mar. Mexicana SS "Campeche"*, 639 F2d 848, 856.)

Moreover, the inherent and inextricable relationship of dunnage to this particular cargo operation cannot be ignored. Pieces of dunnage had been placed between the tiers of the baled burlap to permit the hi-lo's blades to be inserted under the bales. As each bale was removed, the dunnage separating it from the bale under it had to be cleared. Thus, the accumulation of dunnage was an ongoing, normal, usual and regular incident of the stevedoring operation. Since the accumulation of dunnage was a condition which normally arises during such a cargo operation, and one which could easily be eliminated by the longshoremen, it cannot, as a matter of law, be considered unreasonably dangerous for purposes of establishing a shipowner's negligence under section 905 (subd [b]) of title 33 of the United States Code. Once the cargo operation begins a shipowner is not obliged to have the ship's personnel stand by to see that every piece of dunnage is removed to a location clear of the hi-lo's path. As already indicated, the responsibility to provide a safe place to work and to take such precautions regarding working conditions as are necessary to protect the longshoreman is the stevedore's, not the shipowner's. (*Scindia Steam Nav. Co. v De Los Santos*, 451 US 156, 170, *supra*.)

Finally, plaintiff argues that the Joint Maritime Safety Code for the Port of New York, *inter alia*, places upon a shipowner a duty, concurrent with the stevedore's, of maintaining a safe place for stevedoring operations to be performed. As noted in *Lubrano* (575 F Supp 1541, 1548, *supra*), however, the notion that the Code imposes such a duty upon the shipowner is "contrary to the prevailing weight of Second Circuit authority."

Since this case does not present any factual issue as to defendant's negligence, summary judgment should have been granted.

Accordingly, the order of the Supreme Court, New York County (Maresca, J.), entered January 14, 1982, denying defendants' motion for summary judgment dismissing the complaint should be reversed, on the law, without costs or disbursements, and the motion granted.

KUPFERMAN, J. (dissenting). Plaintiff, a longshoreman, brought this action under the Longshoremen's and Harbor Workers' Compensation Act (US Code, tit 33, § 905, subd [b]) to recover damages for personal injuries sustained when a 2,400-pound bale of burlap fell on his right foot while he was unloading cargo on the M/S *Export Builder*. Plaintiff was then employed by John W. McGrath Corp., the stevedore. Defendants are the owners of the ship. Witness testimony is to the effect that a hi-lo machine, brought into the hatch to assist in the discharge of the burlap bales, drove over a two by four piece of dunnage, which caused a burlap bale to fall from the hi-lo blade and to strike the plaintiff. Plaintiff was facing in the opposite direction and, therefore, had no personal knowledge of what caused the bale to fall. A co-worker of the plaintiff asserted that prior to the accident, dunnage had been left in the square of the hatch where they were working; he had complained to a ship's mate about the condition and had been told to leave it there for the crew, which would remove it when the longshoremen gang stopped work.

Plaintiff contends that the shipowner was negligent in not removing the dunnage upon notice of the condition, thereby making them liable for injuries to plaintiff in accordance with the Longshoremen's and Harbor Workers' Compensation Act. Defendants argue that the shipowner had not been negligent; that under the 1972 Longshoremen's and Harbor Workers' Compensation Act, discussed in the majority opinion, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards; that it is the stevedore's responsibility to provide a reasonably safe place to work; and that the shipowner has no duty to inspect or supervise the longshoring operation.

Defendants-appellants rely on *Lubrano v Companhia De Navegacao Lloyd Brasileiro* (575 F Supp 1541 [Haight, J.]). There, the plaintiff, a longshoreman, was in the course of unloading bags of coffee beans when he slipped on some loose beans and injured himself. The evidence also indicated that the ship's mate had been given notice of the loose beans, and he, too, promised to have it cleaned up. Despite this, the court ruled for the shipowner.

More important, though, in its decision the court stated (*supra*, p 1544) that to recover, plaintiff must prove that a dangerous condition, for which defendant was responsible, caused his injury. "Liability of shipowner attaches in the event of such proof, notwithstanding that the stevedore-employer may also have been negligent. It is now clear that 'if the stevedore and shipowner are both guilty of nonperformance of their duties,

they may be concurrently negligent.' *Tragni v. Establissement Maritime Camille,* 705 F. 2d 92, 93 (2d Cir. 1983). Concurrent negligence of stevedore and shipowner renders the latter liable for the longshoreman's entire loss, subject only to reduction for his contributory negligence."

This creates a question for the jury whether, considering the notice to defendant's agent and his affirmative promise to correct the dunnage problem, the shipowner was negligent. The court, in *Lubrano (supra),* also states that the plaintiff must show the condition was a dangerous one, which would be a question for the jury. There it was found that the spilling of coffee beans on the deck, which could be easily pushed or swept away, was a "normal, usual, and regular occurrence". The question here is whether a piece of dunnage can be easily pushed away. An important distinguishing factor in the *Lubrano* case is that there, the duty to clean up the loose beans was within the stevedore's contractual provisions. Where this is in the contract, the longshoremen's union does not permit the ship's crew to go into the holds and perform the sweeping function. Therefore, it was specifically the duty of the stevedore to correct the condition, so it would have been the negligent party. In the present case, there is no such contractual provision.

In addition, the court in *Lieggi v Maritime Co.* (667 F2d 324, 328, n 8), stated in a footnote that "the regulations do not provide that the stevedore's responsibility for the condition of the work spaces is exclusive. The fact that the stevedore has a duty to keep those areas clear does not prevent the shipowner from having one as well; if both the shipowner and the stevedore neglect their duties they may be concurrently negligent."

In conclusion, it is obvious, as Special Term found, that there are a number of questions of fact: whether the dunnage created a dangerous situation or could it have been easily pushed aside, and whether there was negligence on the part of the shipowner and/or the stevedore company. The denial of the defendants' motion for summary judgment seeking dismissal of the complaint should be affirmed.

MURPHY, P. J., and CARRO, J., concur with SULLIVAN, J.; KUPFERMAN and MILONAS, JJ., dissent in an opinion by KUPFERMAN, J.

Order, Supreme Court, New York County, entered on January 14, 1982, reversed, on the law, without costs and without disbursements, and defendants' motion for summary judgment granted.