757 F.2d 23
 1985 A.M.C. 2048, 1 Fed.R.Serv.3d 1070,
17 Fed. R. Evid. Serv. 984
 Jeffrey BARNETT, William C. Parker and Linwood Jones,
Plaintiffs-Appellants,
v.
Bernhard HOWALDT, Seereederei Howaldt, Barber Steamship
Line, Inc., and John Doe, said being fictitious, the true
identity of said person being presently unknown, Seereederei
Howaldt, D.G., S.S. EDITA, Barber Lines, Inc., John Doe 1
Inc. and John Doe 2 Inc., Defendants-Appellees.
 Nos. 667, 668, Dockets 84-7581, 84-7583.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 1, 1985.
Decided March 6, 1985.
 
 Martin Lassoff, New York City (Morris Cizner, Zimmerman & Zimmerman, New York City, on brief), for plaintiffs-appellants Parker and Jones.
 George J. Duffy, Hoboken, N.J., for plaintiff-appellant Barnett, joined in the argument of plaintiffs-appellants Parker and Jones.
 R. Alexander Hulten, New York City, for defendants-appellees Bernhard Howaldt and Seereederei Howaldt.
 John M. Toriello, New York City (Francis X. Byrn, Haight, Gardner, Poor & Havens, New York City, on brief), for defendant-appellee Barber Steamship Lines, Inc.
 Before NEWMAN, KEARSE and PRATT, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiffs-longshoremen Jeffrey Barnett, William C. Parker, and Linwood Jones appeal from a judgment of the United States District Court for the Southern District of New York, Whitman Knapp, Judge, dismissing their complaint in these consolidated actions to recover damages from defendants shipowner and time charterer for personal injuries allegedly sustained aboard the S.S. EDITA, as a result of the collapse of one of the vessel's cargo booms during the unloading of containers. The court granted defendants' motions for summary judgment dismissing the complaint on the ground that plaintiffs had come forward with no evidence of specific facts that could support a finding that any defendant had been negligent. On appeal, plaintiffs contend principally that there existed triable issues as to whether the shipowner negligently rigged and spotted the booms, thereby contributing to the accident. We find in the record no support for plaintiffs' arguments, and we therefore affirm the judgment of dismissal.
 
 I. BACKGROUND
 
 2
 Most of the events, for purposes of defendants' motions for summary judgment, were undisputed. On the morning of August 25, 1981, the crew of the S.S. EDITA rigged and spotted the ship's booms in preparation for longshoremen to discharge empty containers from the number one hatch, using the ship's winches and booms. "Rigging" includes adjusting the angle of the boom from the horizontal; "spotting" involves the lateral positioning of the head of the boom. As rigged, the vessel's cargo gear had a maximum rated weight-bearing capacity of five tons.
 
 
 3
 After the EDITA's crew rigged and spotted the booms, Barnett and Jones commenced working as holdmen, and Parker worked as a deckman, as part of the longshoring gang. The gang was discharging the 2.3-ton containers two at a time; thus each load weighed 4.6 tons. On the first lift of the containers, one of the booms collapsed after the containers had been lifted less than five feet. Plaintiffs claim to have been injured when, seeing the boom collapsing, they jumped from the tops of nearby containers to the winch deck.
 
 
 4
 This action was commenced by Barnett in 1982 pursuant to Sec. 905(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq. (1982) (the "Act"), against shipowners Bernhard Howaldt and Seereederei Howaldt (collectively "Howaldt"), time-charterer Barber Steamship Lines, Inc. ("Barber"), and John Doe. Additional complaints were filed by Parker and Jones, and the three actions were consolidated by the court in 1984. Plaintiffs charged, inter alia, that the boom broke as a result of (1) its defective condition; or (2) the negligent maintenance, repair, design and inspection of the winches and booms which was known to or should have been discovered by defendants; or (3) the equipment's unsuitability and the ship's unsafety.
 
 
 5
 After more than a year of discovery, Howaldt and Barber moved, on the basis of affidavits, interrogatory answers, and deposition testimony, for summary judgment dismissing the complaint, contending that there was no evidence to support plaintiffs' allegations that the ship's equipment was defective or improperly maintained or otherwise unsuitable. Howaldt's statement pursuant to Rule 3(g) of the Local Rules of the Southern District of New York stated that although there was evidence that the ship's crew rigged the boom in question prior to the commencement of the discharging operation that was to be performed by the longshoremen, no complaints were made to the ship's crew by the longshoremen concerning the method of rigging; that Parker, an experienced winch operator, testified at his deposition that he had seen nothing wrong with the rigging of the booms prior to the accident; that the vessel's captain testified at deposition that the boom was inspected regularly by the chief mate and had passed an independent inspection just four months prior to the accident. Barber's motion for summary judgment likewise asserted that discovery had disclosed no support for plaintiffs' assertions of defective, unsuitable, or improperly maintained equipment.
 
 
 6
 Plaintiffs opposed the summary judgment motions, "bas[ing] said opposition on two factual contentions": (1) that since Howaldt indicated that it made periodic inspections of the ship's gear, it should have ascertained that the winches and booms were in a defective condition; and (2) that Howaldt and Barber used poor judgment in not causing the longshoremen to use shoreside equipment, which had greater lifting capacity, rather than the ship's gear. Plaintiffs did not specify the respect in which they contended the ship's gear was defective or inadequate. At oral argument of the summary judgment motion, plaintiffs advanced the additional theory that the ship's crew had caused the accident by negligently rigging and spotting the boom.
 
 
 7
 In a Memorandum and Order dated June 5, 1984, the district court rejected all of plaintiffs' theories. It granted judgment for Barber on the grounds (1) that plaintiffs had come forth with no reason why the charterer should have utilized equipment with greater lifting capacity, when the device in question was rated as capable of lifting five tons and the load weighed 4.6 tons; and (2) that a time charterer is not legally responsible for either the condition of the ship's gear or the equipment used by the longshoremen and thus it may not be held liable for rigging error or a latent defect in the booms. The court granted Howaldt's motion on the grounds that (1) plaintiffs had adduced no evidence that the shipowner had inadequately inspected the booms or that the apparatus contained a latent defect that should have been discovered, and (2) even if the booms had been improperly positioned for the first lift, the longshoremen, and not the crew, were responsible for positioning the booms to perform the work at hand.
 
 
 8
 On appeal, plaintiffs argue principally that there were questions of fact as to whether the ship's crew negligently rigged and spotted the booms. We conclude that plaintiffs did not come forward with any facts sufficient to suggest the existence of a genuine issue of material fact as to the crew's negligence in rigging or spotting the booms or as to any defect in the EDITA's equipment, and we therefore affirm the judgment.
 
 II. DISCUSSION
 
 9
 Section 905(b) of 33 U.S.C. permits a longshoreman to sue the owner of a vessel for damages for injuries caused by the negligence of the vessel. To recover under this section, the longshoreman is required to prove negligence. Since the Act defines "vessel" to include the vessel's "charter [sic ] or bare boat charterer," 33 U.S.C. Sec. 902(21), the longshoreman has the same right of recovery for an act or omission of a time charterer as for an act or omission of the shipowner. See Migut v. Hyman-Michaels Co., 571 F.2d 352, 356 (6th Cir.1978); Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 242 n. 5 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981); see also G. Gilmore & C. Black, The Law of Admiralty Sec. 6-57, at 450 (2d ed. 1975).
 
 
 10
 In order to defeat a motion for summary judgment that is supported by affidavits or other sworn testimony, as provided by Fed.R.Civ.P. 56, and makes a prima facie showing that there exists no genuine issue of material fact to be tried, the nonmoving party must, by affidavit, interrogatory answers, depositions, or other documentation allowed by the Rule, adduce "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 
 11
 In the present case, defendants' motions for summary judgment, properly supported by affidavits and deposition testimony, suggested that there was no evidence of any defective or inadequate equipment or of any negligence on the part of the vessel or charterer. Accordingly, defendants argued that under Sec. 905 neither the shipowner nor the charterer could be held liable for plaintiffs' injuries. In the circumstances, plaintiffs were required to come forward with affidavits, deposition testimony, or other sworn documents containing admissible evidence to show that there was a genuine issue as to whether there was negligence on the part of the vessel. Even viewing the factual record in the light most favorable to plaintiffs as the nonmoving parties, see, e.g., United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); Tragni v. Establissement Maritime Camille, 705 F.2d 92, 92 n. 1 (2d Cir.1983), we agree with the district court that plaintiffs failed to come forward with admissible evidence showing any genuine issue to be tried.
 
 
 12
 In this Court, plaintiffs contend principally that there was a genuine issue as to whether, in initially rigging and spotting the ship's booms, the crew of the vessel negligently rigged the boom in question at an angle of less than 15 degrees from the horizontal. Assuming, for the purposes of this appeal, that the vessel has a duty of care with respect to the initial setting of the equipment even if the longshoremen will normally adjust the equipment for actual operations, we conclude that plaintiffs failed to present any evidence to support this theory of negligence. While the record contains evidence, in the form of deposition testimony by the EDITA's captain, that the booms were rigged and spotted by the ship's crew and that it would be unsafe to use the booms if they were rigged at an angle of less than 15 degrees, the record is barren of any evidence to suggest that in fact the booms were rigged at such an angle. The captain testified that his instructions to the crew were that the booms were to be rigged at an angle of 15 degrees or more, and that after the accident he observed that the booms were in fact at an angle greater than 15 degrees. We have found in the record no evidence to contradict this testimony.
 
 
 13
 We are unpersuaded by plaintiffs' contention that controverting evidence was presented in a statement given by the vessel's boatswain. The boatswain's statement was that "the angle of span between the two runners comes [sic ] almost to horizontal position," and plaintiffs argue that " '[a]lmost a horizontal position' is not consistent with 'at least 15 degrees from horizontal'." (Plaintiffs' brief on appeal at 13 (emphasis in original).) Even assuming that the boatswain's statement, though unsworn, would satisfy Rule 56(e), and assuming that by "almost ... horizontal" he meant less than 15 degrees from the horizontal, plaintiffs' argument misses the mark since the angle of the runners, which are the cables fed from the winch to the cargo hooks, is not dependent solely on the angle of the booms in relation to the mast. During a lift, the winch operator may affect the position of the runners by swiveling the head of the booms or by moving the runners themselves, and the angle of the runners changes as the load is raised, lowered, or moved laterally. During this operation, however, the angle of the boom from the horizontal does not vary. Hence, the boatswain's statement as to the angle of the runners, even if admissible, does not suggest that the booms had been rigged at an angle of less than 15 degrees.
 
 
 14
 Nor are we pursuaded by plaintiffs' contention that the written statement of Barber's port captain Carlson created an issue of fact as to whether the EDITA's crew may have spotted the booms negligently. It is clear from Carlson's deposition that he did not see the accident and there is no indication that he had observed the positioning of the booms prior to the accident. His statement was that "[i]t appears that ... the number 2 derrick was positioned incorrectly. It is felt by me that the number 2 derrick was spotted too far to the left." (Emphasis in original.) The record does not show that Carlson had knowledge of the spotting of the booms sufficient either to make his statement admissible as a business record pursuant to Fed.R.Evid. 803(6) or to warrant admission of his opinion under Fed.R.Evid. 701 (lay opinion must be based on witness's perception). And as Carlson was not the agent of Howaldt, any statements he made as to the crew's spotting of the booms would not be admissible against Howaldt as admissions. Hence we see no admissible statements sufficient to raise an issue of fact as to whether the crew negligently spotted the booms.
 
 
 15
 Finally, plaintiffs' counsel stated to us in oral argument that at trial an expert witness would testify that the accident could have occurred as it did only if the booms had been rigged at an angle less than 15 degrees from the horizontal. Counsel's statement, however, is not evidence, and plaintiffs failed to present any such view to the district court in an affidavit or in other form required by Rule 56(e).
 
 
 16
 In short, there was no evidence before the district court from which it could find that there was a genuine issue to be tried as to the allegedly negligent rigging or spotting of the booms by the ship's crew. Nor does the record reveal that plaintiffs came forward with any evidence of any defect in the vessel's equipment, or any evidence of improper maintenance or inspection of the equipment. We have considered all of plaintiffs' arguments on this appeal and find that none of them overcomes the barrenness of the record.
 
 CONCLUSION
 
 17
 The judgment of the district court dismissing the complaint is affirmed.